Douglas J. Pick, Esq.
Eric C. Zabicki, Esq.
**PICK & ZABICKI LLP**
Proposed Counsel to the Debtor
369 Lexington Avenue, 12th Floor
New York, New York 10017
(212) 695-6000
dpick@picklaw.net

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re:                                                                    Chapter 11
CONGREGATION BIRCHOS YOSEF,                           Case No. 15-

                            Debtor
-----------------------------------------------------------x

## **DEBTOR'S AFFIRMATION PURSUANT TO LOCAL BANKRUPTCY RULE 1007-2**

        BREINDY LEBOVITS, duly affirms as follows:

        1.     I am the Vice-President of Congregation Birchos Yosef, the debtor and debtor-in-possession herein (the "Debtor"). This affidavit is submitted on behalf of the Debtor pursuant to Local Bankruptcy Rule 1007-2.

        2.     The Debtor is a religious corporation which was formed under the New York Religious Corporations Law on January 16, 1985 for the purposes of creating and maintaining a "House of Worship" in accordance with the traditions of the Hebrew faith and to serve and advance the affairs of the surrounding community under the leadership of the Grand Rebbe of Nikolsburg. The Debtor's principal office is located at 201 Route 306, Monsey, New York.

1

3. The Debtor is the owner of the following real properties (collectively, the "Properties"):

| **STREET ADDRESS** | **PROPERTY USE** |
|---|---|
| 900 Route 45<br>Spring Valley, NY | Religious Girl's School |
| 906 Route 45<br>Spring Valley, NY | Single-Family Residential (Unoccupied) |
| 4 Milton Place<br>Spring Valley, NY | Parking Lot for Synagogue Members |
| 6 Milton Place<br>Spring Valley, NY | Three-Story Synagogue |
| 78 South Main Street<br>Spring Valley, NY | School for Special Needs Children |
| 201 Route 306<br>Monsey, NY | Yeshiva |
| 18 Ellish Parkway<br>Spring Valley, NY | Single-Family Residential (Occupied) |
| 53 Decatur Avenue<br>Spring Valley, NY | Residential Building Used in Furtherance of Congregation Matters |
| 39 Saddle River Road<br>Monsey, NY | Two-Family Residential (Occupied Month-To-Month) |

4. The Debtor's by-laws provide for the lease or sale of any of the Properties only upon the approval of two-thirds of Synagogues membership and the unanimous approval of the Debtor's Board of Trustees.

5. On February 26, 2015 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code")

with this Court and an Order for Relief was entered. The Debtor intends to remain in possession of its property and continue to manage its affairs as a debtor-in-possession.

6. The Debtor's chapter 11 filing was precipitated by certain alleged wrongful actions of the Debtor's former Board of Trustees which ultimately resulted in the Debtor's monetary payment defaults to its secured lender (*i.e.*, TD Bank, N.A.) and the scheduling of a foreclosure sale of the Properties for February 27, 2015. Specifically, in 2011, the three (3) former members of the Board of Trustees caused the Debtor to borrow amounts totaling $4,800,000.00 from a gentlemen named Harvey Klein to purchase two of the Properties located at 900 Route 45 and 906 Route 45 (together, the "Route 45 Properties"). The loan was secured by a mortgage against the Route 45 Properties. Upon information and belief, the total purchase price for those Properties was approximately $6,000,000.00. The former Board of Trustees subsequently permitted the Debtor to default on its payment obligations to Harvey Klein resulting in his commencement of an action against the Debtor in the Supreme Court of the State of New York, County of Rockland (the "State Supreme Court"), seeking to foreclose upon the mortgages granted to him against the Route 45 Properties (Index No. 30589/2011).

7. In January 2012, the former Board of Trustees caused the Debtor to borrow funds from TD Bank, N.A. ("TD Bank"). TD Bank subsequently satisfied and took an assignment of Harvey Klein's mortgage against the Route 45 Properties, the balance of which, at that time, totaled only approximately $3,500,000.00.[1] As part of that loan transaction with TD Bank, the Board of Trustees cross-collateralized the loan by way of mortgages against *all* of the Properties.

---

[1] Upon information and belief, the Debtor had other mortgages of approximately $2,700,000.00 (held by Signature Bank against the 201 Route 306 property) and $1,420,000.00 (held by Valley National Bank against the 4 Milton Place property). Upon further information and belief, the intended purpose of the TD Bank loan proceeds was to satisfy all of these mortgages.

3

8. Shortly after consummating the refinancing with TD Bank, the former Board of Trustees allowed the Debtor to default once again (having failed to pay the monthly payment due on December 1, 2012 and each month thereafter) resulting in the commencement of a foreclosure action by TD Bank in the State Supreme Court on February 22, 2013 (Index No. 30988/2013). Apparently in response, the former Board of Trustees decided to sell the Properties located at 4 Milton Place, 78 South Main Street and 201 Route 306 in order to partially pay down the secured obligations owed to TD Bank.

9. In September 2013, and upon learning of the foregoing events, the members of the Debtor commenced an action in the State Supreme Court (Index No. 34853/2013) against the Debtor and the former Trustees (among others) seeking, among other relief, to remove the former Trustees from authority and to declare null and void any contracts of sale purported to be entered into by the Debtor concerning any of the Properties as having been entered into in violation of the Debtor's By-Laws and without full disclosure to the Debtor's members and for amounts less than their fair market values.

10. On or about November 7, 2013, the former Trustees agreed to resign from the Board of Trustees subject to the execution and exchange of a mutually agreeable resignation agreement. The former Trustees also agreed not to take any further actions relating to any of the Properties until a new Board of Trustees could step in. The resignation agreement was signed on November 15, 2013.

11. However, much to the surprise of the new incoming Trustees, it was subsequently discovered that the former Trustees had surreptitiously signed and recorded a two-page "Memorandum of Lease" for the girls' school at the 900 Route 45 building dated October 17, 2013 (and not recorded until November 18, 2013 thereby precluding its discovery until after the former

4

Trustees had resigned) leasing the premises to Bais Chinuch L'Bonois, Inc. ("Bais Chinuch"). The Memorandum of Lease purported to provide for a four (4) year lease term at the rate of $1.00 per year.[2] It was also discovered that the same former Trustees, in furtherance of their ambitions, had also signed a Deed dated November 17, 2013 transferring the Route 45 Properties to Bais Chinuch for $10.00.[3] The Deed was recorded on November 18, 2013 and no transfer taxes were paid.

        12.      The new Board of Trustees believe that the actions of the former Trustees constituted a misguided and ill-conceived attempt to secretly wrest away control of the Properties from the Debtor which was implemented by borrowing monies from TD Bank, securing said borrowings with mortgages on all of the Properties which were otherwise unencumbered and then causing the Debtor to promptly default on the loans in the hopes of purchasing multiple Properties themselves when offered at foreclosure sales.

        13.      On December 31, 2013, the Debtor commenced an action in the State Supreme Court (Index No. 36561/13) against Bais Chinuch seeking to set aside the fraudulent deed and fraudulent lease relating to the Route 45 Properties on the basis that they were made in violation of: (a) §12 of the New York Religious Corporation Law; (b) §§509 and 511 of the New York Not For Profit Law; and/or (c) the Debtor's By-Laws described above. Ultimately, on August 19, 2014, Bais Chinuch consented to set aside the Deed but refused to set aside the lease agreement. On January 14, 2015, the Debtor filed a motion with the State Supreme Court seeking the entry of summary judgment in its favor declaring the lease to be of no legal force or effect, to dismiss Bais Chinuch's counterclaim for the imposition of a constructive trust, and for an award of sanctions.

---

2  Section 12 of the New York Religious Corporation Law requires advance judicial approval of any lease made by a religious corporation which is for a period of more than five (5) years.

3  The transfer of the Route 45 Properties violated the covenants with TD Bank.

14.     In response to the Debtor's summary judgment motion, Bais Chinuch allegedly fired its counsel and sought additional time to respond to the Debtor's motion. After hearing oral argument on Bais Chinuch's counsel's motion to be relieved as counsel, the State Supreme Court adjourned the submission date on the Debtor's summary judgment motion for one week and directed that Bais Chinuch appear by new counsel. New counsel subsequently appeared for Bais Chinuch, however said counsel insisted that he needed until February 18, 2015 to prepare and file opposition papers or he would have to decline the representation. Ultimately, incoming counsel's request was granted and all pleadings would be deemed submitted for decision on February 27, 2015, the same date set for the foreclosure sale of the Properties.

15.     Unfortunately, in furtherance of their scheme to enrich themselves at the expense of the Debtor and its members, the former Trustees had apparently also entered into negotiations to sell the 78 South Main Street property. The former Trustees had signed a contract of sale dated June 13, 2013 purportedly on behalf of the Debtor to sell that property for $1,200,000.00. At the time that said contract was executed, the property was leased to a school for special needs children (*i.e.*, Hamaspik of Rockland County, Inc.). The school had been leasing the property from the Debtor since 2007. It was the buyer's (*i.e.*, Hawaii Properties LLC) intent to continue the existing lease with the school.4  Although the Debtor has stopped the sale from closing, the buyer and the school commenced an action against the Debtor seeking to enforce the contract of sale and the school has withheld making any rent payments to the Debtor.

16.     As a result of these and other improper actions of the former Trustees of the Debtor, the Debtor has been unable to collect any rent or to otherwise exploit the Properties so as to

---

4 Upon information and belief, Hawaii Properties LLC was and is affiliated with Hamaspik of Rockland County, Inc.

6

make any payments to TD Bank. While the foregoing events transpired, TD Bank pressed ahead with its foreclosure action. In this regard, a Judgment of Foreclosure and Sale was entered on December 9, 2014. A foreclosure sale of the Properties was ultimately scheduled to be held on February 27, 2015. Upon consultation with counsel, the Debtor ultimately decided that it had no other option but to seek relief under chapter 11 of the Bankruptcy Code so as to stay the foreclosure sale of the Properties while pursuing its rights and remedies concerning said Properties and in the hopes of obtaining financing sufficient to resolve the obligations owed to TD Bank.

17. Pursuant to LBR 1007-2(a)(3), there has been no committee organized prior to the entry of the Order for Relief.

18. Pursuant to LBR 1007-2(a)(4), a list containing the names and addresses of what I believe to be the Debtor's twenty largest unsecured creditors, excluding insiders, has been or shortly will be filed with the Court.

19. Pursuant to LBR 1007-2 (a)(5), all of the Debtor's secured creditors are listed in the Debtor's Schedule D which has been or shortly will be filed with the Court.

20. Pursuant to LBR 1007-2(a)(6), an approximate summary of the Debtor's assets and liabilities are set forth in the Debtor's Schedules B, D, E, and F which have been or shortly will be filed with the Court.

21. Pursuant to LBR 1007-2(a)(7), no shares of the Debtor's stock are publicly held.

22. Pursuant to LBR 1007-2(a)(8), to the best of my knowledge, there is no property of the Debtor in the possession or custody of any public officer, receiver, trustee, pledgee, assignee of rents, liquidator, secured creditor, or agent of any such person. However, approximately

$180,000.00 in rent payments in connection with the 78 South Main Street property is presently being held in escrow by counsel to Hamaspik of Rockland County, Inc.

23. Pursuant to LBR 1007-2(a)(9), all leases to which the Debtor is a party have been listed in its Schedule G which has been or shortly will be filed with the Court.

24. Pursuant to LBR 1007-2(a)(10), all of the Debtor's assets and books and records are maintained by Chaskel Landau and/or the Debtor's outside accountants.

25. Pursuant to LBR 1007-2(a)(11), the Debtor is party to the following pending actions (all of which were commenced in the State Supreme Court)[5]:

| **Title of Action** | **Index No.** | **Nature/Status of Case** |
| --- | --- | --- |
| *TD Bank, N.A. v. Congregation Birchos Yosef, et al.* | 30988/13 | Foreclosure; Judgment Entered |
| *Hawaii Properties, LLC, et al. v. Congregation Birchos Yosef* | 32422/14 | Breach of Contract of Sale; Pending |
| *Congregation Birchos Yosef v. Town of Ramapo* | 33626/14 | Tax Certiorari; Pending |
| *Breindy Lebovits, et al. v. Congregation Birchos Yosef, et al.* | 34853/13 | Enjoin/Set-Aside Conveyances of Properties; Pending |
| *Moshe Mermelstein, et al. v. Congregation Birchos Yosef* | 35684/13 | Breach of Contract for Services; Pending |
| *Meir Ganz, et al. v. Congregation Birchos Yosef* | 36338/13 | Personal Injury; Pending |
| *Congregation Birchos Yosef v. Bais Chinuch L'Bonois, Inc.* | 36561/13 | Set-Aside Conveyances/Lease of Properties; Pending |
| *Commissioners of the State Insurance Fund v. Congregation Birchos Yosef* | 52138/14 | Collection of Workers' Compensation Insurance Premiums; Pending |

---

5  Upon information and belief, there may be other actions pending against or otherwise involving the Debtor in courts other than the State Supreme Court the details of which the Debtor does not presently have at its immediate disposal. The Debtor will supplement its disclosures to include any such other actions that may be discovered by the Debtor.

26. Pursuant to LBR 1007-4(a)(12), the Debtor's Board of Trustees is comprised of the following individuals:

| **Name** | **Title** |
|---|---|
| Rabbi Joseph Lebovits | Trustee, President and Grand Rebbe of Nikolsburg |
| Breindy Lebovits | Trustee and Vice-President |
| Aron Markowitz | Trustee |
| Shea Klagsbrum | Trustee |

27. The Debtor presently has six (6) full-time employees.

28. The amount that the Debtor estimates to be paid for services during the thirty (30) day following the Petition Date to the officers of the Debtor is $0.

29. I anticipate that the Debtor's gross income during the thirty (30) day period following the Petition date will total approximately $22,000.00. The Debtor's expenses and disbursements (including payroll) for the same period should total approximately $20,500.00.

30. It is the Debtor's intention to file a plan of reorganization subsequent to a resolution of the issues and disputes discussed at length above concerning the Properties and the amounts owed to TD Bank. I believe that under the supervision of the Bankruptcy Court, the Debtor will be able to pay its creditors substantially more than they would receive if the Debtor went through a forced Chapter 7 liquidation.

**AFFIRMED** on February 26, 2015 at New York, New York, under penalties of perjury.

                                                    /s/Breindy Lebovits
                                                    BREINDY LEBOVITS