Douglas J. Pick, Esq.  　　　　　　　　　　　　　Hearing Date: To Be Determined
Eric C. Zabicki, Esq.  　　　　　　　　　　　　　　Time: To Be Determined
**PICK & ZABICKI LLP**
Proposed Counsel to the Debtor
369 Lexington Avenue, 12th Floor
New York, New York 10017
(212) 695-6000

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
In re:　　　　　　　　　　　　　　　　　　　　　Chapter 11
CONGREGATION BIRCHOS YOSEF,　　　　　　Case No. 15-22254 (RDD)

　　　　　　　　　　Debtor
-------------------------------------------------------x

### DEBTOR'S MOTION FOR ENTRY OF AN ORDER: (A) AUTHORIZING THE DEBTOR TO REJECT EXECUTORY CONTRACT OF SALE; AND (B) DIRECTING RELEASE OF RENTS HELD IN ESCROW

TO THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE:

　　　　　Congregation Birchos Yosef, the debtor and debtor-in-possession herein (the "Debtor"), by and through its undersigned counsel, hereby moves (the "Motion") this Court for the entry of an Order, pursuant to §§105(a) and 365(a) of title 11 of the United States Code (the "Bankruptcy Code"): (a) authorizing the Debtor to reject a certain "Contract of Sale" (the "Contract", a copy of which is attached hereto as *Exhibit "A"*) between the Debtor, as seller, and Hawaii Properties, LLC ("Hawaii Properties"), as purchaser, with regard to the real property owned by the Debtor and located at 78 South Main Street, Spring Valley, New York (the "South Main Street Property"), and to the extent that the Contract may be executory in nature; and (b) directing the release of certain funds being held in escrow to the Debtor representing rents payable to the Debtor by Hamaspik of Rockland County, Inc. ("Hamaspik") in connection with the South Main Street Property, and respectfully represents and alleges:

## BACKGROUND

1. The Debtor is a religious corporation which was formed under the New York Religious Corporations Law on January 16, 1985 for the purposes of creating and maintaining a "House of Worship" in accordance with the traditions of the Hebrew faith and to serve and advance the affairs of the surrounding community under the leadership of the Grand Rebbe of Nikolsburg.

2. On February 26, 2015 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with this Court and an Order for Relief was entered. The Debtor continues to manage its property and affairs as a debtor-in-possession. No committee or examiner has been appointed in this matter.

3. On or about October 30, 2006, the Debtor acquired title to the South Main Street Property from Affordable Community, Inc. for the sum of $1,500,000.00. Simultaneously with the purchase, the Debtor paid Affordable Community, Inc. an additional $500,000.00 to complete the building located on the South Main Street Property. As such, the total purchase price paid by the Debtor for the South Main Street Property was $2,000,000.00.

4. In 2008, the Debtor, as landlord, entered into a written lease agreement (the "Lease", a copy of which is attached hereto as *Exhibit "B"*) with Hamaspik, as tenant, with regard to the South Main Street Property for use by Hamaspik as "a Day Rehabilitation Program and Offices." The stated term of the Lease is ten (10) years, running from July 1, 2008 through June 30, 2018 unless terminated prior thereto. The current monthly base rent payable by Hamaspik under the Lease is approximately $11,000.00. Hamaspik continues to operate a facility for special needs children at the South Main Street Property as of the date hereof.

5.  In 2012, the Debtor's former Board of Trustees caused the Debtor to borrow certain amounts from TD Bank, N.A. ("TD Bank") for the purposes of, among other things, paying off an existing mortgage against certain real property owned by the Debtor located at 900-906 Route 45, Spring Valley, New York (the "Route 45 Property"). Said mortgage was then held by a gentlemen named Harvey Klein whom had commenced a foreclosure proceeding in 2011. Although the mortgage held by Mr. Klein was only against the Route 45 Property, the Debtor's former Trustees cross-collateralized the amounts borrowed from TD Bank with mortgages against several other properties which the Debtor owned (many of which were otherwise unencumbered), including the South Main Street Property.

6.  Shortly after consummating the new loan transaction with TD Bank, the former Board of Trustees allowed the Debtor to default thereunder which resulted in the commencement of a foreclosure action by TD Bank in the Supreme Court of the State of New York, County of Rockland (the "State Supreme Court"), on February 22, 2013 (Index No. 30988/2013), concerning its consolidated mortgage against the Debtors' properties. Apparently in response, the former Board of Trustees decided to sell certain properties owned by the Debtor located at 4 Milton Place, Spring Valley, New York, and 201 Route 306, Spring Valley, New York, *as well as the South Main Street Property at issue with regard to the instant Motion*, in order to pay down the secured obligations owed to TD Bank.

7.  On or about June 13, 2013, the former Trustees signed the Contract, purportedly on behalf of the Debtor, providing for the sale of the South Main Street Property to Hawaii Properties for the sum of $1,200,000.00. Upon information and belief, Hawaii Properties is affiliated with Hamaspik, the tenant of the South Main Street Property. Upon execution of the Contract, Hawaii Properties deposited the sum of $120,000.00 with the Debtor's counsel (*i.e.*,

3

Kunstlinger & Wohlgemuth, PLLC) to be held in escrow pending application thereof against the purchase price at closing (the "Contract Deposit"). On September 11, 2013, the former Trustees caused the Debtor to file a petition with the State Supreme Court (Index No. 34822/2013) seeking approval of the sale pursuant to §12 of the Religious Corporations Law (pursuant to which leave of court is required prior to any sale, mortgage or lease for a term exceeding five years of any real property owned by a religious corporation) and Article 5 of the Not-For-Profit Corporation Law (requiring approval of the membership of a not-for-profit corporation to any sale of any real property of the corporation) (the "South Main Street Approval Petition").

8. On September 16, 2013, and having learned of the foregoing events and unauthorized actions (among others) by the former Trustees, the members of the Debtor commenced an action in the State Supreme Court (Index No. 34853/2013) against the Debtor and the former Trustees (among others) seeking, among other relief, to remove the former Trustees from authority and to declare null and void any contracts of sale purported to be entered into by the Debtor concerning any of the properties owned by the Debtor as having been entered into in violation of the Debtor's By-Laws, in violation of the Religious Corporations Law and/or the New York Not-For-Profit Law and for amounts less than their fair market values.[1]

9. On or about October 22, 2013, and because certain of the conditions precedent to a closing on the Contract could not be met, the Debtor's counsel advised counsel to Hawaii Properties in writing that the Debtor was exercising its right to terminate the Contract pursuant to its express terms. Specifically, the Contract provided that, if the proposed sale was not approved by the State Supreme Court (without which a sale could not occur regardless of any other provisions of the Contract) and TD Bank did not release its mortgage lien against the South

---

[1] As a result of the action commenced by the Debtor's members, and on or about November 7, 2013, the former Trustees agreed to resign subject to the execution and exchange of a mutually agreeable resignation agreement. The resignation agreement was signed on November 15, 2013.

4

Main Street Property within ninety days of the execution of the Contract, either party could elect to terminate the Contract. (See Sections 10 and 43 of the Contract). Simultaneously with the notice of termination, the Debtor's counsel returned the Contract Deposit to Hawaii Properties. Hawaii Properties did not initially object to this nor did it initially reject the Debtor's election to terminate the Contract or attempt to return the Contract Deposit to the Debtor. By letter dated October 23, 2013, the Debtor's counsel advised the State Supreme Court that the Debtor wished to withdraw the South Main Street Approval Petition.[2]

10. In the interim, and commencing in August 2013, Hamaspik ceased paying any of the rent and additional rent owed to the Debtor under the Lease in connection with Hamaspik's use of the South Main Street Property. As a result, and on or about May 19, 2014, the Debtor commenced an action against Hamaspik in the Justice Court of the Town of Ramapo seeking to recover possession of the South Main Street Property (the "Eviction Proceeding").

11. On May 29, 2014, *i.e.*, more than seven months after the Debtor's termination of the Contract and return of the Contract Deposit, Hawaii Properties and Hamaspik jointly commenced an action against the Debtor in the State Supreme Court (Index No. 032422/2014) seeking, among other relief, specific performance with regard to the Contract or, alternatively, money damages for breach of contract in the sum of $1,200,000.00 (the "South Main Street Action"). Simultaneously therewith, Hawaii Properties and Hamaspik filed a Notice of Pendency concerning the South Main Street Property.

12. Shortly thereafter, Hawaii Properties and Hamaspik filed a joint motion (the "Injunction Motion") in the South Main Street Action seeking: (a) to enjoin any conveyance or other alienation of the South Main Street Property; (b) to stay the Eviction Proceeding and/or

---

[2] Prior to the Debtor's withdrawal of the South Main Street Approval Petition, the Honorable Victor J. Alfieri, J.S.C., expressed his belief that the $1,200,000.00 purchase price provided for under the Contract appeared to be too low.

5

to enjoin the Debtor from taking efforts to remove Hamaspik from possession of the South Main Street Property; and (c) an order directing that all rent payable by Hamaspik to the Debtor be deposited into and held in escrow by counsel to Hawaii Properties and Hamaspik (*i.e.*, Cohen, LaBarbera & Landrigan, LLP) on the basis that the rent would have been payable to Hawaii Properties (and not the Debtor) if the Debtor had not breached the Contract as alleged. In opposition to the Injunction Motion, the Debtor argued (among other things) that the Contract had been validly terminated by the Debtor in October 2013 and, as such, no viable action for specific performance could be pleaded by Hawaii Properties. Hawaii Properties contested the Debtor's assertions in this regard.

13. On May 30, 2014, counsel to the parties subsequently appeared before the State Supreme Court in connection with the Injunction Motion. At said hearing, the Injunction Motion was consensually resolved upon certain terms that were placed on the record and were approved by the State Supreme Court. Specifically, and among other things:

- Hamaspik agreed to deposit the sum of $85,000.00 against its rent arrears to the Debtor into escrow with its attorney within ten days;

- Hamaspik agreed to deposit the sum of $10,101.82, representing the monthly base rent then payable under the Lease, into escrow with its attorneys on the first day of each month commencing on July 1, 2013 and continuing each month thereafter pending further Court order;

- The Debtor consented to a stay of the Eviction Proceeding pending further Court order; and

- The Debtor consented to a stay of any transfer or other alienation of the South Main Street Property pending further Court order.

Copies of the relevant portions of the transcript of the above-referenced hearing are attached hereto as *Exhibit "C"*. Upon information and belief, Hamaspik has made the deposits into escrow as required under the above-referenced settlement terms. As a result, the Debtor believes

6

that Hamaspik's counsel is presently holding amounts totaling approximately $300,000.00 in escrow representing rent obligations payable to the Debtor under the Lease (the "Escrowed Funds"). Hamaspik has refused to release any portion of the Escrowed Funds until there has been a final determination as to the propriety of the Debtor's termination of the Contract in October 2013.

14. The Debtor reasonably believes that the fair market value of the South Main Street Property is presently not less than $2,000,000.00. The Property is presently encumbered by, at a minimum, a consolidated mortgage lien held by TD Bank securing amounts which TD Bank has asserted total approximately $9,200,000.00.

## JURISDICTION AND VENUE

15. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§157 and 1334. Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. §157(b) and venue is proper before this Court pursuant to 28 U.S.C. §1409. The statutory predicates for the relief sought herein are §§105(a) and 365(a) of the Bankruptcy Code.

## RELIEF REQUESTED

16. Although the Contract was validly terminated by the Debtor in October 2013, and solely in order to obtain the release of the Escrowed Funds to the Debtor (which funds the Debtor desperately needs in order to, among other things, pay the real estate taxes with regard to the South Main Street Property and to attempt to negotiate a resolution of TD Bank's mortgage thereon), by this Motion, the Debtor seeks: (a) to reject the Contract with Hawaii Properties in accordance with §365(a) of the Bankruptcy Code and (b) to compel the release of the Escrowed Funds to the Debtor pursuant to §105(a) of the Bankruptcy Code.

17.     Pursuant to §365(a), a debtor-in-possession is empowered, subject to court approval, to assume or reject an executory contract or unexpired lease. It is well-settled that a contract for the sale of land may be assumed or rejected under §365 of the Bankruptcy Code to the extent that it is executory. *See, e.g.*, In re Sundial Asphalt Co., Inc., 147 B.R. 72, 80-81 (E.D.N.Y. 1992); In re Balco Equities Ltd., 323 B.R. 85, 95-96 (Bankr. S.D.N.Y. 2005); In re Meehan, 46 B.R. 96 (Bankr. E.D.N.Y. 1985). The term "executory contract" is not defined in the Bankruptcy Code, however the Second Circuit has defined it as relating to a contract "on which performance remains due to some extent on both sides." Eastern Air Lines, Inc. v. The Ins. Co. (In re Ionosphere Clubs, Inc.), 85 F.3d 992, 998 (2d Cir. 1996) (citations omitted).

18.     Although never expressly adopted, the Second Circuit looks to the standard set forth by Professor Vernon Countryman in his law review article, *Executory Contracts in Bankruptcy: Part I*, 57 Minn. L.Rev. 439 (1973) ("Countryman"), in which he wrote that an executory contract is one "under which the obligation of both the bankruptcy and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." Id. at 460; COR Route 5 Co., LLC v. Penn Traffic Co. (In re Penn Traffic Co.), 524 F.3d 373, 379 (2d Cir. 2008). Discussing the application of this standard within the context of New York law, the court in In re Bradlees Stores, Inc., 2001 WL 1112308 (S.D.N.Y. Sept. 20, 2001), stated as follows:

> Under the Countryman Test, a contract is executory if failure of the parties to perform the obligations remaining due would constitute a material breach of the agreement. To determine if failure of performance would constitute a material breach, courts look to state contract law. Under New York law, a material breach is one which would justify the other party to suspend his own performance, or a breach which is so substantial as to defeat the purpose of the entire transaction. The question of whether there has been substantial compliance or material breach is a question of fact.

8

Id. at *7 (internal citations and quotation marks omitted). In keeping with the foregoing standards, land sale contracts are generally deemed to be executory in nature even if the only performance remaining under the contract at issue is the conveyance of title. *See, e.g.,* Sundial Asphalt, 147 B.R. at 80 ("The agreement remains substantially unperformed. The buyer still has to pay the remainder of the purchase price and the seller has to give up possession and convey title. The failure of either side to complete performance here would have constituted a material breach. Clearly, we are dealing with an executory contract."); Balco Equities, 323 B.R. at 96 ("Even if the only performance required of the Debtor is conveyance of title, such failure would constitute a breach. Moreover, this is *not* the only performance required of the Debtor. . .[T]he Epic Orange Contract requires the Debtor to provide all of the following: (i) Deed; (ii) Sellers Affidavit of Title; (iii) all corporate resolutions; (iv) certificate of non-foreign status in accordance with Internal Revenue Code §1445; and (v) 'all other instruments as may be reasonably required by Epic Orange's legal counsel or the title company.'. . .The Debtor is also obligated...to continue to cooperate with Epic Orange 'to execute such other assurances as may be reasonably required for the purpose of pursuing the applications (for final subdivision approval and building permits).'. . .Failure as to any of these provisions would be a breach of the contract. . .") (emphasis in original).

19.     As discussed above, it is the Debtor's position that, in October 2013, it validly terminated the Contract in accordance with its express terms. Hawaii Properties disputed the Debtor's position in this regard and the issue (*i.e.*, the validity of the Debtor's termination of the Contract) in the South Main Street Action. Nevertheless, Hamaspik will not consent to the release of any of the Escrowed Funds until a final determination on this issue is rendered. As

9

such, the Debtor now seeks a judicial determination that the Contract was terminated (by way of its rejection) and that the Escrowed Funds be released to the Debtor.

20. Specifically, and assuming for the sake of argument only, if it were deemed that the Contract was not validly terminated by the Debtor in October 2013 (which the Debtor submits is contrary to the facts and circumstances), performance under the Contract would presently be due from both the Debtor (*e.g.*, conveyance of title and possession of the South Main Street Property, compliance with "Seller's" stated obligations under the Contract, etc...) and Hawaii Properties (*e.g.*, payment of the balance of the purchase price, compliance with "Purchaser's" stated obligations under the Contract, etc...) and any failure to perform would have constituted a breach of the Contract. In fact, the performance that would be due from the Debtor under the Contract was affirmatively pled by Hawaii Properties by way of its complaint filed in the South Main Street Action. As such, and again only to the extent that the Debtor's termination of the Contract in October 2013 may not have been valid, the Contract would be subject to rejection by the Debtor under §365 of the Bankruptcy Code as an "executory contract".

21. In determining whether the rejection of an executory contract or unexpired lease should be authorized, courts apply a "business judgment test." *See, e.g.,* In re Stable Mews Assoc., Inc., 41 B.R. 594, 596 (Bankr. S.D.N.Y. 1984). The rejection of an executory contract or unexpired lease is appropriate upon a showing that said assumption or rejection would benefit the estate. Id.; *see also* Sundial Asphalt, 147 B.R. at 81 ("Under the 'business judgment' test, an executory contract for the sale of land should be rejected if the debtor can demonstrate that rejection will benefit the estate.") (citations omitted); Balco Equities, 323 B.R. at 99 ("There is

10

no question that – [the Trustee] having received an offer in a substantially higher amount for the New Windsor Property – the Epic Orange Contract would burden the estate if not rejected.")

22. After due consideration, the Debtor has concluded, in its reasoned business judgment, that the rejection of the Contract would benefit the estate. As discussed above, the Contract was purportedly executed on behalf of the Debtor by its former Trustees in violation of the Debtor's By-Laws and in violation of the Religious Corporations Law and the Not-For-Profit Law. As such, the Debtor does not believe that the Contract is valid and binding upon it. Moreover, and as discussed at length above, the Debtor believes that it validly terminated the Contract in October 2013.

23. Additionally, the Debtor further believes that the current fair market value of the South Main Street Property is not less than $2,000,000.00. As such, the $1,200,000.00 purchase price provided for under the Contract does not constitute "fair consideration" under the fraudulent conveyance provisions of Article 10 of the New York Debtor and Creditor Law or "reasonably equivalent value" under the fraudulent transfer provisions of §548 of the Bankruptcy Code. As such, rejection of the Contract would benefit the Debtor, its estate and its creditors by permitting the Debtor to maximize the value of the South Main Street Property. Accordingly, the Debtor respectfully submits that the rejection of the Contract is an appropriate exercise of its business judgment.

24. Furthermore, pursuant to §105(a) of the Bankruptcy Code, this Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." As discussed above, counsel to Hamaspik is presently holding the Escrowed Funds pending further Court order. As a result of the Debtor's rejection of the Contract, the issues concerning the validity of the Debtor's termination of the Contract upon

which Hawaii Properties and Hamaspik rely in refusing to release the Escrowed Funds will have been determined. If Hawaii Properties or Hamaspik wish to assert a claim against the Debtor in connection with the Contract, the Lease, the South Main Street Property or any other matter, they may do so by filing a proof of claim in the Debtor's case. The Debtor, of course, reserves all of its rights to object to any proof(s) of claim filed by Hawaii Properties or Hamaspik on any and all grounds (including that the Contract was validly terminated in October 2013).

25.    The Escrowed Funds, as well as the monthly payments of $10,101.82 that Hamaspik continues to depositing into escrow each month (rather than paying same to the Debtor), constitutes property of the Debtor's estate which should be immediately released to the Debtor. As such, the Debtor respectfully requests that the Order entered by this Court rejecting the Contract, contain a direction to the law firm Cohen, LaBarbera & Landrigan, LLP to release the Escrowed Funds to the Debtor within fourteen days of the date of entry of said Order on the docket of this case. The Debtor respectfully submits that such relief is appropriate under the circumstances.

## CONCLUSION

26.    Based upon the foregoing, it is respectfully requested that the Court grant the Motion in its entirety along with such other and further relief as may be just and proper.

Dated: New York, New York
       March 10, 2015

                                   **PICK & ZABICKI LLP**
                                   Proposed Counsel to the Debtor

                                   By: _____
                                       Douglas J. Pick
                                       369 Lexington Avenue, 12th Floor
                                       New York, New York 10017
                                       (212) 695-6000