Douglas J. Pick  
Eric C. Zabicki  
**PICK & ZABICKI LLP**  
Proposed Counsel to the Debtor  
369 Lexington Avenue, 12th Floor  
New York, New York 10017  
(212) 695-6000  

Hearing Date: March 31, 2015  
Time: 10:00 a.m.  

UNITED STATES BANKRUPTCY COURT  
SOUTHERN DISTRICT OF NEW YORK  
-----------------------------------------------------------x  
In re:  

CONGREGATION BIRCHOS YOSEF,  

                Debtor.  
-----------------------------------------------------------x  

Chapter 11  
Case No. 15-22254 (RDD)  

### DEBTOR'S OBJECTION TO MOTION OF TD BANK, N.A. FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 2004

TO THE HONORABLE ROBERT D. DRAIN  
UNITED STATES BANKRUPTCY JUDGE:

      Congregation Birchos Yosef, the debtor and debtor-in-possession herein (the "Debtor"), by and through its undersigned counsel, as and for its objection to the motion (the "Motion") of TD Bank, N.A. ("TD Bank") for entry of an Order, pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), directing the examination of, and the production of documents by, the Debtor, respectfully represents and alleges:

### PRELIMINARY STATEMENT

    1.    Respectfully, and as more fully discussed herein, the Debtor is more than willing to produce *appropriate* documents to TD Bank within the purview of Bankruptcy Rule 2004 (and in accordance with the loan documents between them). However, and though the Debtor understands the broad range of inquiry permitted under Bankruptcy Rule 2004, the breadth of the document requests proposed by TD Bank appear to be geared more towards causing the

Debtor and its professionals to undertake unnecessary work and to incur unnecessary professional fees rather than exploring information relevant to TD Bank's position vis-à-vis the Debtor's financial affairs.

2. In this regard, prior to the filing of the Motion and at 4:49 p.m. on Friday, March 13, 2015, TD Bank's counsel forwarded a copy of the Motion to the Debtor's counsel requesting, in "matter of fact" fashion: "Please let us know by noon on Monday whether your client will voluntarily produce the documents [requested by way of TD Bank's proposed Subpoena attached to the Motion] and sit for an examination." In response, the Debtor's counsel immediately offered to "meet and confer" with TD Bank and its counsel for the purposes of discussing and agreeing upon the appropriate scope of the Debtor's voluntary document production under the facts and circumstances (including the fact that TD Bank is vastly oversecured and is amply familiar with the fact that the Debtor is a religious, not-for-profit corporation which is not presently being paid by its tenants) while minimizing the administrative burden to the Debtor's estate. A similar proposal had been made by the Debtor's counsel prior thereto.

3. TD Bank refused to so much as consider the possibility of discussing an amicable course of action. Rather, within ninety minutes of the Debtor's counsel's refusal to simply accept TD Bank's broad-sweeping document requests without any further discussion whatsoever, TD Bank opted to file the Motion with this Court. Copies of counsel's e-mail exchange with regard to the foregoing are attached hereto as *Exhibit "A"*. Respectfully, the Motion is objectionable for the reasons more fully discussed herein.

## BACKGROUND

4. The Debtor is a religious corporation which was formed under the New York Religious Corporations Law on January 16, 1985 for the purposes of creating and maintaining a "House of Worship" in accordance with the traditions of the Hebrew faith and to serve and advance the affairs of the surrounding community under the leadership of the Grand Rebbe of Nikolsburg.

5. On February 26, 2015 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with this Court and an Order for Relief was entered. The Debtor continues to manage its property and affairs as a debtor-in-possession. No committee or examiner has been appointed in this matter. The first Meeting of Creditors under §341 of the Bankruptcy Code is scheduled to be held on April 9, 2015.

6. As set forth in the Debtor's Schedule A filed with this Court, the Debtor is the owner of the following real properties (collectively, the "Properties"):

| **Street Address** | **Property Use** | **Estimated Current Value** |
|---|---|---|
| 900 Route 45 Spring Valley, NY | Religious Girl's School | $4,500,000.00 |
| 906 Route 45 Spring Valley, NY | Single-Family Residential (Unoccupied) | $200,000.00 |
| 4 Milton Place Spring Valley, NY | Parking Lot for Synagogue Members | $3,000,000.00 |
| 6 Milton Place Spring Valley, NY | Three-Story Synagogue | $5,000,000.00 |

| | | |
|---|---|---|
| 78 South Main Street<br>Spring Valley, NY | School for Special Needs Children | $2,000,000.00 |
| 201 Route 306<br>Monsey, NY | Yeshiva | $10,000,000.00 |
| 18 Ellish Parkway<br>Spring Valley, NY | Single-Family Residential (Occupied) | $1,000,000.00 |
| 53 Decatur Avenue<br>Spring Valley, NY | Residential Building Used in Furtherance of Congregation Matters | $500,000.00 |
| 39 Saddle River Road<br>Monsey, NY | Two-Family Residential (Occupied Month-To-Month) | $500,000.00 |
| | **Total Estimated Value:** | $26,700,000.00 |

7. In 2012, the Debtor's former Board of Trustees caused the Debtor to borrow certain amounts from TD Bank for the purposes of, among other things, paying off an existing mortgage against certain real property owned by the Debtor located at 900-906 Route 45, Spring Valley, New York (the "Route 45 Property"). Said mortgage was then held by a gentlemen named Harvey Klein whom had commenced a foreclosure proceeding in 2011. Although the mortgage held by Mr. Klein was only against the Route 45 Property, the Debtor's former Trustees *cross-collateralized* the amounts borrowed from TD Bank with mortgages against several other properties which the Debtor owned (many of which were otherwise unencumbered).

8. Shortly after consummating the new loan transaction with TD Bank, the former Board of Trustees allowed the Debtor to default thereunder which resulted in the commencement of a foreclosure action by TD Bank in the Supreme Court of the State of New York, County of Rockland (the "State Supreme Court"), on February 22, 2013 (Index No.

4

30988/2013), concerning its consolidated mortgage against the Debtors' properties. Apparently in response, the former Board of Trustees decided to sell certain properties owned by the Debtor located at 4 Milton Place, Spring Valley, New York, 201 Route 306, Spring Valley, New York, and 78 South Main Street, Spring Valley, New York, in order to pay down the secured obligations owed to TD Bank.

9.    On September 16, 2013, and having learned of the foregoing events and unauthorized actions (among others) by the former Trustees, the members of the Debtor commenced an action in the State Supreme Court (Index No. 34853/2013) against the Debtor and the former Trustees (among others) seeking, among other relief, to remove the former Trustees from authority and to declare null and void any contracts of sale purported to be entered into by the Debtor concerning any of the properties owned by the Debtor as having been entered into in violation of the Debtor's By-Laws, in violation of the Religious Corporations Law and/or the New York Not-For-Profit Law and for amounts less than their fair market values. As a result of the action commenced by the Debtor's members, and on or about November 7, 2013, the former Trustees agreed to resign subject to the execution and exchange of a mutually agreeable resignation agreement. The resignation agreement was signed on November 15, 2013.

10.   On December 5, 2014, a Judgment of Foreclosure and Sale was entered in favor of TD Bank. As stated in the Motion, TD Bank asserts that the Debtor's pre-petition indebtedness to TD Bank under the Judgment of Foreclosure and Sale totals approximately $9,200,000.00. Said amounts are secured by, among other "Collateral" more fully discussed by TD Bank in the Motion, first priority mortgages against the following Properties *having aggregate estimated current values of $19,700,000.00*: (a) 4 Milton Place, Spring Valley, New York

5

(estimated value of $3,000,000.00); (b) 201 Route 306, Spring Valley, New York (estimate value of $10,000,000.00); (c) 78 South Main Street, Spring Valley, New York (estimated value of $2,000,000.00); (d) 900 Route 45, Spring Valley, New York (estimated value of $4,500,000.00); and (e) 906 Route 45, Spring Valley, New York (estimated value of $200,000.00).

11. Immediately following the filing of the Debtor's chapter 11 petition, the Debtor's undersigned proposed counsel reached out to counsel to TD Bank for the purposes of making an introduction and to offer the cooperation of the Debtor, its new Trustees and its new (bankruptcy) counsel in addressing the issues between TD Bank and the Debtor. In this regard, the Debtor's counsel made numerous offers to TD Bank's counsel that a meeting be held for the purposes of discussing the outstanding issues and to explore possible resolution scenarios. Such offers were flatly refused. Copies of various e-mail exchanges between and among counsel to the Debtor and counsel to TD Bank concerning the foregoing are attached hereto as *Exhibit "B"*.

12. Instead, and commencing on or about March 5, 2015, TD Bank's counsel began requesting whether the Debtor's counsel would accept service of a Subpoena under Bankruptcy Rule 2004 (in a form not yet drafted) on behalf of the Debtor providing for the Debtor's production of documents and submission to an examination by TD Bank. In response, the Debtor's counsel advised that the Debtor's position was that discovery/depositions under Bankruptcy Rule 2004 was not warranted at this early stage of the case, particularly in light of TD Bank's refusal to so much as meet with the Debtor, TD Bank's awareness of the most important aspects of the Debtor's financial affairs and the plain fact that TD Bank was vastly oversecured. On March 10, 2015, TD Bank's counsel forwarded the Debtor's counsel a copy of Schedule A to TD Bank's proposed Subpoena (having now been drafted) and again requested that the Debtor's

counsel accept service and coordinate the document production and examination dates with TD Bank. The Debtor's counsel reiterated the Debtor's concerns regarding discovery/depositions under Bankruptcy Rule 2004, including its concern that such discovery would be wasteful of the Debtor's resources. Copies of various e-mail exchanges between and among counsel to the Debtor and counsel to TD Bank concerning the foregoing are attached hereto as *Exhibit "C"*.

13. As discussed above, and as evidenced by the e-mails attached hereto as *Exhibit "A"*, on March 13, 2015, TD Bank's counsel once again requested that the Debtor's counsel accept service of the proposed Subpoena. At no time did TD Bank's counsel ever request any comments from the Debtor's counsel regarding the specific document requests to be made by way of the Subpoena, but rather continually requested that the Debtor's counsel agree to accept service of the Subpoena as is. In response to TD Bank's counsel's latest request, the Debtor's counsel advised as follows:

> I had responded to you in an earlier email in which you had made the same exact request as set forth below. I had advised you that we had offered to meet with the bank and cooperate with the bank in resolving and curing the monetary defaults caused by the old board of trustees and that the offer was twice rejected by the bank. I had also advised that, as a measure of good faith, we would be prepared to pay adequate protection although you are substantially over secured but, in response, you had demanded 9% of the full judgment amount as adequate protection. Again, we are prepared to discuss all open issues and concerns with the bank if the bank will agree to meet with us. I assume that you have read our Local Rule Affidavit and the two pending motions which reflect and recite the background facts and our attempts to free up the rents currently held in escrow. We are currently drafting a motion to address the unpaid rents owed by the Yeshiva located on 201 Route 306. Based on the facts of this case, I do not believe that a 2004 Motion is needed or necessary. If the bank continues to refuse to speak to us then simply send me a list of documents that it actually needs to give it comfort. If you want I can review the loan

7

> documents to see what is required therein and provide that to you. The subpoena that you attach to your papers seems overbroad and should be narrowed to what is actually needed and necessary for the bank's internal records and its comfort that the loan is not at risk. I am prepared to go over the subpoena with you at your convenience or review the loan documents and provide you with is required and provided therein. I look forward to your response. Thanks Doug Pick

14. Immediately following the above-quoted response from the Debtor's counsel, TD Bank filed the Motion with the Court.

## **DISCUSSION**

15. Bankruptcy Rule 2004(a) provides that, "[o]n motion of any party in interest, the court may order the examination of any entity." Fed. R. Bankr. P. 2004(a). Subdivision (b) of Bankruptcy Rule 2004 states that the scope of such an examination may relate "to the acts, conduct, or property or to the liabilities and financial condition of the debtor or to any matter which may affect the administration of the debtor's estate..." Fed. R. Bankr. P. 2004(b). Subdivision (c) of Bankruptcy Rule 2004 provides that the court may require the examinee to produce documents for examination. Fed. R. Bankr. P. 2004(a).

16. The purpose of an examination pursuant to Bankruptcy Rule 2004 is to facilitate the discovery of the debtor's assets and the unearthing of frauds. See In re Bakalis, 199 B.R. 443, 447-48 (Bankr. E.D.N.Y. 1996); see also In re Johns-Manville Corp., 42 B.R. 362, 364 (S.D.N.Y. 1994). The scope of an examination pursuant to Bankruptcy Rule 2004 is broadly construed and has been likened to a "fishing expedition." In re Ionosphere Clubs, Inc., 156 B.R. 414, 432 (S.D.N.Y. 1993). However, examination as to matters having no relationship to the debtor's affairs or the administration of the estate is improper. Johns-Manville, 42 B.R. at 364.

Similarly, Bankruptcy Rule 2004 examinations may not be used for the purposes of abuse or harassment and cannot stray into matters not relevant to the basic inquiry. Bakalis, 199 B.R. at 447-48.

17. The Debtor respectfully submits that the inquiry sought to be undertaken by TD Bank under Bankruptcy Rule 2004 is improper under the facts and circumstances of the Debtor's case. In this regard, pursuant to Schedule A to its proposed Subpoena, TD Bank would have the Debtor compile and produce a litany of documents (under twenty-eight (28) separate document requests/categories of documents many of which have numerous sub-requests) seemingly for no other reason than to cause the Debtor and its professionals to perform work and incur professional fees. By way of example only:

- With regard to each of its twenty-eight (28) document requests, TD Bank would have the Debtor produce copies of all "Communications" (defined as "the transmittal of information (in the form of facts, ideas, inquiries or otherwise)" and presumably encompassing all e-mails, letters, faxes and the like) regardless of the subject matter of each specific request. For instance, by way of its first request, TD Bank requests all "Communications relating to the Debtor's financial statements or financial reports that relate to and identify in detail the financial activities of the Debtor for the period from January 1, 2013 through the present…" Similarly, TD Bank requests the production of "Communications" with regard to a broad range of subjects such as the Debtor's tax filings (third request), the Debtor's potential exit strategy concerning its chapter 11 case (tenth request), the Debtor's leasing transactions (twelfth through fifteenth requests), potential sales transactions concerning the Properties (sixteenth and seventeenth requests) and various litigations (twenty-third through twenty-sixth requests). Complying with such requests

9

would be an arduous and unduly burdensome task based upon the facts and circumstances;

- While TD Bank's document requests are, in general, overly expansive in light of the facts and circumstances of this case (including its only having been recently commenced), several requests are clearly premature. For instance, TD Bank requests all "Documents and Communications relating to": (a) "the Debtor's income, revenue, funding, expenses, liabilities, budgets, cash-flow projections or forecasts during the pendency of the Bankruptcy Case, and the Debtor's sources or means of funding itself during the pendency of the Bankruptcy Case" (ninth request); and (b) "the Debtor's sources or means of financing or funding a confirmable plan of reorganization (or plan of liquidation) under the Bankruptcy Code or to otherwise emerge from bankruptcy protection in accordance with the Bankruptcy Code" (tenth request); and

- Several of TD Bank's document requests seek the production of documents by the Debtor that are easily ascertainable from public records and which, in all likelihood, have already been retrieved and reviewed by TD Bank or its counsel. For instance, TD Bank requests all "Documents and Communications": (a) "relating to and identifying all real estate or property tax liabilities relating to the Mortgaged Properties and the Non-Mortgaged Properties…" (twenty-second request); (b) "(including, without limitation, all pleadings, motions, applications, or court orders) relating to the pending litigation against the Debtor by Hawaii Properties, LLC, et al. in the State Supreme Court of New York (Index No. 32422/14)…"; and (c) "(including, without limitation, all pleadings, motions, applications, or court orders) relating to the Debtor's pending litigation against the Former Trustees in the State Supreme Court of New York (Index No. 34853/13)…" Such documents and information are readily available online and it is highly

10

unlikely that TD Bank is not already aware of the current tax liabilities concerning all of the Properties (from the Debtor's schedules or from online public real property tax records) and has not already obtained and reviewed all of the requested litigation documents (from the State Supreme Court's online filing system).

        18.    The foregoing are merely examples of the expansive inquiry which TD Bank is seeking to impose upon the Debtor. Again, the Debtor's chapter 11 case is not even one (1) month old and the initial §341 meeting has not yet been held. It also cannot reasonably be disputed that TD Bank is more or less at no risk with regard to the amounts owed to it by the Debtor on account of the substantial value of the collateral securing the repayment of those obligations (*e.g.*, an equity cushion of some $10,500,000.00 based upon the Debtor's estimated value of the "Mortgaged Properties" at $19,700,000.00 against TD Bank's secured claim of $9,200,000.00 – even if the Debtor's valuation of were off by 25%, TD Bank would still be the beneficiary of an equity cushion of $5,575,000.00). Nevertheless, TD Bank would have the Debtor, a non-profit religious corporation overseen by its members/trustees, produce all manner of documents from a *pro forma* list of requests more appropriately directed at IBM. Moreover, TD Bank has been involved with the Debtor for several years and as is more than aware of the more important aspects of the Debtor's financial affairs. Similarly, the Debtor has made numerous offers to meet with TD Bank and its professionals to discuss any and all issues. As such, there is no basis for TD Bank to now seek to have a representative of the Debtor appear for an examination under Bankruptcy Rule 2004.

11

19. There is seemingly no good reason for the Debtor and its professionals to expend the significant amount of time and expense that would be required in order to comply with TD Bank's Subpoena. Again, the Debtor understands its obligation to disclose and explain its assets, liabilities and other financial affairs in connection with its bankruptcy case and will continue to do so in good faith. However, the broad scope of the document requests which TD Bank is attempting to compel the Debtor to respond to are not appropriate under the facts and circumstances of this case.

## CONCLUSION

26. Based upon the foregoing, it is respectfully requested that the Court deny the Motion in its entirety, with leave to renew (if necessary) at a more appropriate time in this case, along with such other and further relief as may be just and proper.

Dated: New York, New York
       March 17, 2015

PICK & ZABICKI LLP
Proposed Counsel to the Debtor

By: _____
Douglas J. Pick
369 Lexington Avenue, 12th Floor
New York, New York 10017
(212) 695-6000