Douglas J. Pick, Esq.
Eric C. Zabicki, Esq.
**PICK & ZABICKI LLP**
*Counsel to the Debtor*
369 Lexington Avenue, 12th Floor
New York, New York 10017
Telephone (212) 695-6000

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------X
In re:
:   **Chapter 11**
**CONGREGATION BIRCHOS YOSEF,**        Case No. 15-22254 (RDD)
:
Debtor.
------------------------------------X

## APPLICATION FOR AN ORDER HOLDING BAIS CHINUCH L'BONOIS, INC., ABRAHAM SCHWARTZ, YECHIEL YOEL LAUFER, YISROEL DAVID ROTTENBERG, AND ANYONE ACTING IN CONCERT WITH THEM IN CONTEMPT FOR VIOLATION OF THE AUTOMATIC STAY PROVISIONS OF THE BANKRUPTCY CODE (11 U.S.C. § 362)

**TO: THE HON. ROBERT D. DRAIN, U.S. BANKRUPTCY JUDGE**

The application of Congregation Birchos Yosef, by its attorney, Douglas J. Pick, Esq., respectfully shows and represents:

1. Congregation Birchos Yosef (the "Debtor") filed a Chapter 11 proceeding (the "Petition") with this Court on February 26, 2015.

2. The filing of the Petition was precipitated by certain alleged wrongful actions of the Debtor's former Board of Trustees, acting in concert with persons affiliated with Bais Chinuch L'Bonois, Inc. ("Bais Chinuch").

3. This is an application by the Debtor for the issuance of an Order to Show Cause and temporary restraining order, and, upon the return date of the underlying motion, that this Court issue an Order (i) determining that Bais Chinuch L'bonois, Inc., Abraham Schwartz ("Schwartz"), Yechiel Yoel Laufer ("Laufer") and Yisroel David Rottenberg ("Rottenberg" and, collectively with Bais Chinuch, Schwartz and Laufer, the "Contemnors") are in contempt of court for their violation of the automatic stay provisions of the U.S. Bankruptcy Code, and for the assessment of actual and punitive damages against them, (ii) vacating a professed post-petition "restraining order" issued by the Rabbinical Court of Mechon L'Hoyroa (the "Rabbinical Court"), which purports to prohibit the Debtor from continuing the prosecution of certain of the adversary proceedings commenced by the Debtor in this Court, (iii) permanently enjoining each of the Contemnors from seeking, and the Rabbinical Court, or any other Rabbinical Authority, from issuing, any "Sirov" (a/k/a "Refusal Letter") as a result of the Debtor's alleged failure to arbitrate the pre-petition claims and issues that are now presented in the adversary proceedings commenced in this Court, (iv) permanently enjoining the Contemnors from commencing or continuing any Rabbinical Court proceeding against the Debtor or its officers while the Debtor's chapter 11 case is pending,, and (v) granting such other and further relief as may be just and proper.

4. For the reasons set forth herein, it is respectfully submitted that the Contemnors" have violated the automatic stay provisions of Bankruptcy Code § 362 in commencing claims in a Rabbinical Court, and obtaining a purported "restraining order" ostensibly prohibiting the Debtor from proceeding in certain of the adversary proceedings commenced by Debtor in this Court, notwithstanding the filing of the Petition in bankruptcy.

5. Each of the Contemnors is actually aware of the existence of this chapter 11 action, as all of them are defendants in adversary proceedings heretofore commenced against them in this case. Moreover, each of those persons is represented by counsel herein.

6. Notwithstanding their actual knowledge of the existence of this bankruptcy case, and their inclusion as defendants in adversary proceedings commenced herein, the Contemnors contacted the Rabbinical Court of Mechon L'Hoyroa (the "Rabbinical Court") seeking to have the claims and disputes raised in the adversary proceedings submitted to that forum for disposition. By way of a summons dated June 18, 2015, the Rabbinical Court advised three of the Debtor's officers that the Contemnors had purportedly commenced an arbitration proceeding before that tribunal "regarding the claims that you have between yourselves." The summons also purported to contain an injunction as follows:

> And we hereby restrict continuing the claims before the secular courts, and you are required to stop immediately the claims, until the matter will be clarified before a Jewish Bais Din.

7. A copy of the summons, together with an English translation thereof, is annexed hereto and labeled Exhibit "1". Upon receipt of the same, the Debtor contacted an attorney knowledgeable in both Jewish law and bankruptcy law, Avrom R. Vann, Esq. On June 22, 2015, Mr. Vann delivered a letter to the Rabbinical Court, advising it as follows (see Exhibit "2" annexed hereto):

> ... by virtue of the provisions of the Bankruptcy Code and the automatic stay therein contained, the institution and prosecution of an Arbitration Proceeding (which is what the law views a Bais Din Proceeding to be) is absolutely prohibited and would be a violation of the Bankruptcy Code and also as I understand it, would be

binding upon the Bais Din under the concept of Dino Demalchuso Dino[1].

8.  Mr. Vann went on to point out to the Rabbinical Court that the Contemnors had the ability to apply to this Court for a lifting of the stay so that they could pursue claims in arbitration, or move to compel a determination of their claims in arbitration. Specifically, Mr. Vann pointed out as follows:

> ... the claimants who have instituted the [arbitration] proceeding before Mechon L'Hoyroa are not without a remedy. They are free to go to the Bankruptcy Court sand seek what is known as a relief from the automatic stay asking the Bankruptcy Court to allow them to proceed before the Beth Din. If and when the Bankruptcy Court gives such an approval, then the claimants in this [arbitration] proceeding would be free to proceed before the Beth Din without violating the law.

9.  Finally, Mr. Vann advised the Rabbinical Court that "even issuing a Summons to any of the persons connected with the Bankruptcy Proceeding would be a violation of the Automatic Stay provisions of the Bankruptcy Code." Mr. Vann provided the Rabbinical Court with print-outs of two cases discussing the fact that Bais Din arbitrations fall within the scope of the automatic stay.[2]

10.  Apparently undeterred by the law as pointed out by Mr. Vann, the Contemnors pressed forward with their post-petition Rabbinical Court arbitration. Yesterday, June 24, 2015, Debtor's officers received another summons – the so-called "Second Invitation" – which

---

[1] According to the Beth Din of America's "Layman's Guide to Dinei Torah (Beth Din Arbitration Proceedings)," the principal in Jewish law called "dina d'malchusa dina" literally means, "the law of the government is the law." The Beth Din of America points out that "the exact parameters are somewhat complex, but this means that Jewish law recognizes many secular laws" and that "Bankruptcy laws are often a good example."

[2] As the Court is well-aware, there are many such cases, but the ones provided by Mr. Vann were *In re Pachman* (1010 Bankr. LEXIS 1221) and *In re Salander-O'Reilly Galleries* (475 B.R. 9, 2012 U.S. Dist LEXIS 95601).

required them to attend the Rabbinical Court arbitration at 10:00 o'clock today, June 25, 2015. A copy of that summons is annexed hereto and labeled Exhibit "3".

11.  As set forth in the accompanying Affirmation of Debtor's vice-president, if the Debtor's officers refuse to attend the "scheduled" arbitration proceeding today, a third summons will be issued, most likely requiring them to attend a session early next week. If they do not attend for that third time, a "Refusal Letter" (or, as it is known, a "Sirov") will be issued by the Rabbinical Court. Once a *Sirov* is issued it has draconian consequences within the Hassidic community (of which Debtor's officers are members).[3] First, it will be publicized in the newspapers serving the Hassidic community and Debtor's officer will be subject to ridicule and derision in that community. Additionally, the Debtor's officer's children would potentially no longer be permitted to attend school in the community, and the officers themselves would potentially no longer be permitted to attend religious services in the community. In effect, the *Sirov* would be tantamount to excommunicating the Debtor's officers (indeed, its entire Congregation) from the ultra-religious Hassidic Jewish community.

12.  It is basic Bankruptcy Law that upon the filing of a petition in bankruptcy, an automatic stay is created which prohibits "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case" [*see*, 11 U.S.C. § 362(a)(1)]. With exceptions not relevant to the case at bar, it is clear that the automatic stay "is broad and covers all proceedings against the Debtor, including arbitrations,

---

[3] A *Sirov* is a probationary decree that subjects the recipient to shame, scorn, ridicule and public ostracism by other members of the Jewish religious community (*see, Leiberman v. Leiberman*, 149 M.2d 983 [S.Ct. Kings Cty. 1991]).

license revocations, administrative proceedings and judicial proceedings" (*see, In re Kaiser Aluminum Corporation*, 303 B.R. 299 [D.Ct. DE 2003] and cases cited therein).

13. Proceedings in a Rabbinical Courts are recognized as arbitration proceedings and judgments from Rabbinical Courts can be confirmed by a court of the State of New York and converted into a civil judgment against the losing party (*see,* C.P.L.R. § 7500 *et seq.*, and, also, *Spillman v. Spillman*, 273 A.D.2d 316 (2d Dept. 2000) and *Brisman v. Hebrew Academy of the Five Towns of Rockaway*, 2008 W.L. 6949807 (N.Y. Supp.).

14. The post-petition application of the Contemnors to the Rabbinical Court to summon the Debtor to attend an arbitration regarding pre-petition claims and disputes is clearly a violation of the automatic stay.

15. The implication of the violations by the Contemnors (by pursuing their claims in the Rabbinical Court), however, have more far-reaching effects than a simple attempt to seek a forum which they likely consider to be more favorable. They were unquestionably acutely aware that upon the refusal of the Debtor's officers to participate in the arbitration proceedings of the Rabbinical Court (as well they had to given the automatic stay), the Rabbinical Court would issue a *Sirov* which would result in *de facto* excommunication of the Debtor's officers and their families from their religious community.

16. The blatant attempt by the Contemnors to force Debtor's hand to give up its claims in this Court (and thereby permit the Contemnors and their co-conspirators to avoid the discovery, compliance and enforcement remedies contained in the Federal Rules) is, it is respectfully submitted, a clear, willful and intentional violation of the automatic stay. By pursuing their pre-petition claims and/or defenses in the Rabbinical Courts, and sanctioning the Rabbinical Courts' issuance of a *Sirov*, with the draconian effect that will have on the Debtor's officers and their

families, the Contemnors knew that they would place the Debtor in the untenable position of either having to forego its lawful remedies in this Court or effectively face excommunication from their religious community. As such, the Contemnors should be found in contempt and sanctioned for their egregious conduct [*see* 11 U.S.C. § 362(k)].

17. While the Debtor's officers recognizes that they cannot compel the community to be "neighborly" to them, the draconian sanctions of a *Sirov*, with the attendant effect on their innocent families, are clearly designed to compel the Debtor to agree to arbitrate a matter in violation of the automatic stay provisions of the Code. Although it has been held that the issuance of a *Sirov* does not, alone, create the level of duress necessary to permit a court to refuse to confirm an arbitration award pursuant to C.P.L.R. § 7500 *et seq.* (*see, Lieberman v. Liberman, supra*), the demand by the Contemnors to arbitrate, post-petition, pre-petition claims and disputes, with the knowledge that failure to accede to the demand would result in a *Sirov*, rises to the level of an intentional violation of the automatic stay provisions of the Bankruptcy Code for which compensatory and punitive damages are appropriate.

18. Although it is hard to quantify the damage to the Debtor, and the Debtor's officers and their families, it is respectfully requested that this Court sanction the Contemnors at least in the amount of the Debtor's actual legal fees in having to bring this application before the Court, and assess punitive damages as the Court deems appropriate because the conduct complained of was willful, unjustified, malicious and vindictive.

19. The proposed Order to Show Cause contains a provision enjoining the Contemnors from pursuing any remedies in the nature of, and the Rabbinical Court from issuing, a *Sirov* (or Refusal Letter) pending a hearing and determination of this application. Such a temporary restraining Order is *absolutely* necessary because, if a *Sirov* is issued while

this motion is pending, the damages will be irreparable and cannot be reversed by anything that this Court might subsequently do.

20.   This matter is brought by Order to Show Cause instead of the usual Notice of Motion as it is a priority that the Court determine at least the permanent injunctive relief requests before irreversible actions are taken. The Debtor urges that service of this notice by facsimile and overnight mail upon counsel for each of the Contemnors, and on the Rabbinical Court directly by facsimile and by overnight mail, will be sufficient notice. The Debtor will also serve the Office of the U.S. Trustee in a similar fashion.

21.   No prior application for this or similar relief has heretofore been made.

**WHEREFORE**, it is respectfully requested that this Court sign the annexed Order to Show Cause and temporary restraining order, and, upon the return date of this motion, that the Court issue an Order (i) determining that Bais Chinuch, Abraham Schwartz, Yechiel Yoel Laufer and Yisroel David Rottenberg are in contempt for the violation of the automatic stay provisions of the Bankruptcy Code, and for the assessment of actual and punitive damages against them, (ii) vacating a professed post-petition "restraining order" issued by the Rabbinical Court of Mechon L'Hoyroa, which purports to prohibits the Debtor from continuing the prosecution of the adversary proceedings commenced herein, (iii) permanently enjoining Bais Chinuch, Schwartz, Laufer and Rottenberg from seeking, and the Rabbinical Court of Mechon L'Hoyroa, or any other Rabbinical Authority, from issuing, any "Sirov" (a/k/a "Refusal Letter") as a result of Debtor's failure to arbitrate the pre-petition issues now the subject of the adversary proceedings brought in this case, (iv) permanently enjoining Bais Chinuch, Schwartz, Laufer and Rottenberg from commencing or continuing any Rabbinical Court proceeding against

Debtor or its officers, and (v) granting such other and further relief as to the Court may seem just and proper.

Dated:  New York, New York
        June 25, 2015

                                                    PICK & ZABICKI LLP

                                                    By: _____
                                                        Douglas J. Pick, Esq.

                                                    369 Lexington Avenue, 12th Floor
                                                    New York, New York 10017
                                                    Telephone (212) 695-6000

                                                    *Counsel for Debtor*