**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>CONGREGATION BIRCHOS YOSEF,<br><br>               Debtor. | Chapter 11<br><br>Case No. 15-22254 (RDD) |

---

## CREDITOR'S CHAPTER 11 PLAN OF REORGANIZATION FOR CONGREGATION BIRCHOS YOSEF, PROPOSED BY TD BANK, N.A.

---

**McCARTER & ENGLISH, LLP**
Joseph Lubertazzi, Jr.
Matthew Heimann
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
Telephone: (973) 622-4444
Facsimile:  (973) 624-7070
Email: jlubertazzi@mccarter.com
Email: mheimann@mccarter.com

*Counsel to TD Bank, N.A., Plan Proponent*

Dated: Newark, New Jersey
       July 9, 2015

# TABLE OF CONTENTS

ARTICLE.................................................................................................................................1

I.

INTRODUCTION ..............................................................................................................1

II.

    CLASSIFICATION AND TREATMENT OF CLAIMS ................................................1

        **A.**   General Overview .................................................................................1
        **B.**   Definitions.............................................................................................2
        **C.**   Unclassified Claims .............................................................................8
        **D.**   Classes of Claims: Classification, Treatment and Voting Rights........11
        **E.**   Acceptance or Rejection of the Plan....................................................13
        **F.**   Means of Implementing the Plan ........................................................14
        **G.**   Unsecured Claims. ...............................................................................18
        **H.**   Plan Distributions by the Disbursing Agent .......................................20

III.

    TREATMENT OF MISCELLANEOUS ITEMS ...........................................................21

        **A.**   Executory Contracts and Unexpired Leases ......................................21
        **B.**   Changes in Rates Subject to Regulatory Commission Approval............22
        **C.**   Retention of Jurisdiction.......................................................................22
        **D.**   Notices under the Plan .........................................................................23

IV.

    EFFECT OF CONFIRMATION OF PLAN....................................................................23

        **A.**   Discharge .............................................................................................23
        **B.**   Revesting of Property in the Debtor ....................................................23
        **C.**   Effectuating Documents; Further Transactions ...................................24
        **D.**   Modification of the Plan ......................................................................24
        **E.**   Post-Confirmation Dismissal ..............................................................24
        **F.**   Post-Confirmation Quarterly Fees, Reports and Management ............24
        **G.**   Severability of Plan Provisions............................................................25
        **H.**   Injunction ............................................................................................25
        **I.**   Exculpation ..........................................................................................26
        **J.**   Releases................................................................................................26

# ARTICLE
## I.

## INTRODUCTION

Congregation Birchos Yosef (the "Debtor") is the debtor in this Chapter 11 Case (all capitalized terms are defined herein). On February 26, 2015, the Debtor commenced a bankruptcy case by filing a voluntary Chapter 11 petition under the Bankruptcy Code with the Bankruptcy Court, bearing case no. 15-22254 (RDD).

This document is the Chapter 11 Plan proposed by TD Bank, N.A., the Proponent and largest secured creditor of the Debtor. Sent to you in the same envelope as the Plan is the Disclosure Statement, which has been approved by the Bankruptcy Court and is provided to help you understand the Plan.

This is a plan of reorganization. The Plan proposes to pay all Allowed Claims in full.

# ARTICLE
## II.

## CLASSIFICATION AND TREATMENT OF CLAIMS

**A.    General Overview**

As required by the Bankruptcy Code, the Plan classifies Claims (there are no equity interests as non-profit corporations do not have shareholders) in various Classes according to their right to priority of payments as provided in the Bankruptcy Code. The Plan provides the treatment that each Class will receive under the Plan.

The Plan proposes to pay all Holders of Allowed Claims in full from (i) the Hamaspik Escrow Reserve; (ii) the Closing Costs and Net Proceeds from the sale of the Debtor's Real Property; (iii) the Litigation Proceeds; and (iv) Available Cash (including charitable donations or revenue from the Debtor's lease agreements, if any).

Recognizing that the Bankruptcy Code considers Classes of Claims to be "Impaired" if the Plan alters, in any respect and to any degree, the legal, equitable or contractual rights of any Holders of Claims, and given that payment on Allowed Claims will not occur on the Effective Date, the Plan considers all Classes of Claims to be Impaired, and thus entitled to vote to accept or reject the Plan. Notwithstanding such Impairment, all Classes of Claims are expected to be paid in full.

MEI 20730118v.1

**B.**    **Definitions**

**Scope of Definitions**.  For purposes of the Plan, except as expressly otherwise provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings assigned to them in this Article of the Plan or the Bankruptcy Code or Bankruptcy Rules.  In all references to any parties, persons, entities or corporations, the use of any particular gender or the plural or singular number is intended to include the appropriate gender or number as the text may require.

1.    "**Administrative Claim**" means a Claim against the Debtor or the Estate arising on or after the Petition Date and prior to the Effective Date for a cost or expense of administration of the Chapter 11 Case that is allowable under Sections 364(c)(1), 365, 503(b) or 507(a) or (b) of the Bankruptcy Code (as applicable)—including, without limitation, (i) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estate; (ii) the actual and necessary costs and expenses for the operation of the Debtor; (iii) compensation for legal, financial advisory, accounting and other services and reimbursement of expenses awarded or Allowed under Sections 330(a), 331 or 503(b) of the Bankruptcy Code and (iv) all fees and charges assessed against the Estate under Chapter 123 of Title 28 of the United States Code, 28 U.S.C. §§1911 and 1930, including, without limitation, U.S. Trustee Fees.

2.    "**Allowed**," when used as an adjective preceding the word "Claim," means any Claim against the Debtor, proof of which was Filed on or before the Bar Date, or, if no Proof of Claim is Filed, which has been or is hereafter listed by the Debtor as liquidated in amount and not disputed or contingent and, in either case, a Claim as to which no objection to the allowance thereof has been interposed with the applicable period of limitations fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or as to which any objection has been interposed and such Claim has been Allowed in whole or in part by a Final Order.  Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated or disputed, and for which no Proof of Claim is or has been timely Filed, is not considered Allowed and shall be expunged without further action by the Debtor and without further notice to any party or action, approval or Order of the Bankruptcy Court.  Notwithstanding anything to the contrary herein, no Claim subject to Section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until the Holder of such Claim pays in full the amount that it owes the Debtor or as otherwise agreed to by the Debtor.  "**Allow**" and "**Allowing**" shall have correlative meanings.

3.    "**Available Cash**" means all Cash held by or for the benefit of the Debtor (including any charitable donations), but expressly excludes (i) the Net Proceeds, (ii) the Litigation Proceeds (unless otherwise designated so), (iii) the Hamaspik Escrow Reserve and (iv) the amount of Cash estimated and reserved by the Debtor or Disbursing Agent to (A) pay all post-Effective Date fees payable under section 1930 of Chapter 123 of Title 28 of the United States Code and (B) fund and maintain any other post-Effective Date reserve requirements in connection with any agreements or otherwise.  After the Final Distribution Date, any Available Cash remaining shall be vested with the Debtor.

4.    "**Balloting Agent**" means the law firm of McCarter & English, LLP, counsel for

2

the Proponent, or its designee.

5.    "**Bankruptcy Code**" means Title 11 of the United States Code, as amended.

6.    "**Bankruptcy Court**" means the United States Bankruptcy Court for the Southern District of New York having jurisdiction over the Chapter 11 Case and, to the extent of any reference made pursuant to 28 U.S.C. §157 and/or the General Order of the District Court pursuant to 28 U.S.C. §151, the United States District Court for the Southern District of New York.

7.    "**Bankruptcy Rules**" mean, collectively, the Federal Rules of Bankruptcy Procedure, promulgated under 28 U.S.C. §2075, and the general, local and chambers rules of the Bankruptcy Court, as now in effect or hereafter amended, as applicable to the Chapter 11 Case.

8.    "**Bar Date**" means the date by which Proofs of Claim must be Filed, which, for non-governmental units, was June 19, 2015 and, for governmental units, is August 25, 2015, pursuant to the Bankruptcy Court's *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof*, entered on May 5, 2015.

9.    "**Broker**" means the Person or Entity appointed by the Proponent (and approved in the Confirmation Order) who is authorized to sell the Real Property, either by private sale or public auction, as required by the Plan.  The term "Broker" also includes the Broker's advisors, representatives, attorneys, employees and agents.

10.    "**Business Day**" means and refers to any day except Saturday, Sunday or "legal holiday" (as defined by Bankruptcy Rule 9006(a)).  If the term "Business Day" is not used for calculating time periods, the Plan is referring to sequential calendar days.

11.    "**Cash**" means legal tender of the United States of America and equivalents thereof.

12.    "**Chapter 11 Case**" means the Debtor's bankruptcy case under Chapter 11 of the Bankruptcy Code styled In re Congregation Birchos Yosef, Case No. 15-22254 (RDD), which is pending before the Bankruptcy Court.

13.    "**Claim**" means a claim (as defined in Section 101(5) of the Bankruptcy Code) against the Debtor.

14.    "**Class**" means a grouping of substantially similar Claims for common treatment thereof pursuant to the terms of the Plan.  Because the Debtor is a non-profit corporation organized under New York law, there is no Class of equity holders or interests.

15.    "**Closing**" means the consummation of the sale of any parcel of Real Property in accordance with the Sale Procedures, the Sale Orders and other terms and conditions of the Plan.

16.    "**Closing Costs**" means, in connection with the sale and Closing of any parcel of

Real Property (be it by private sale or public auction): all real estate taxes (including the Allowed Real Property Tax Claims), Broker commissions (which shall be negotiated and approved by the Proponent), title service costs, recording fees, expenses, reimbursement costs for the Broker, the Allowed Proponent Fee Claim and other costs and expenses required by federal or state law in transactions involving real property at Closing. All Closing Costs are subject to prior approval by the Proponent in accordance with the Sale Procedures.

17.    "**Closing Date**" means and refers to the date on which a Closing occurs and title to any of parcel of Real Property is transferred to a new owner.

18.    "**Confirmation Date**" means the date on which the Bankruptcy Court enters the Confirmation Order on its docket in the Chapter 11 Case. The Confirmation Date is the same date as the Effective Date.

19.    "**Confirmation Hearing**" means a hearing conducted before the Bankruptcy Court for the purpose of considering Confirmation of the Plan, as such hearing may be continued from time to time.

20.    "**Confirmation Order**" means the Order of the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

21.    "**Creditor**" means any Person or Entity that has a Claim against the Debtor that arose on or before the Petition Date or a Claim against the Estate of any kind specified in Section 502 of the Bankruptcy Code. This term includes all Persons, corporations, partnerships or business Entities holding Claims against the Debtor, and is sometimes used interchangeably with the term "Holder."

22.    "**Debtor**" shall mean Congregation Birchos Yosef.

23.    "**Disbursing Agent**" means, as applicable, the law firm of Pick & Zabicki LLP or any party appointed by and subject to Court approval (except for the Debtor or insiders of the Debtor), who shall hold and distribute payments in Cash to Holders of Allowed Claims after the Effective Date pursuant to the provisions of the Plan and Confirmation Order. Payments of Allowed Claims from the Net Proceeds or as Closing Costs, however, shall be distributed on such respective Closing Dates by the Broker, not the Disbursing Agent. As provided for in the Plan, on or before the Final Distribution Date, the Disbursing Agent shall be compensated and reimbursed for its reasonable fees and expenses by the Litigation Proceeds and Available Cash; it shall not be paid from the Net Proceeds or as part of the Closing Costs.

24.    "**Disclosure Statement**" means and refers to the Disclosure Statement (pursuant to Section 1125 of the Bankruptcy Code), as amended, supplemented or modified from time to time in writing—including all exhibits and schedules thereto—and approved by the Bankruptcy Court.

25.    "**Disclosure Statement Order**" means an Order of the Bankruptcy Court approving the Disclosure Statement as containing adequate information pursuant to Section 1125

ME1 20730118v.1

of the Bankruptcy Code.

26.     "**Disputed**" means any Claim that is not yet Allowed.

27.     "**Effective Date**" means the date on which the Confirmation Order is entered by the Bankruptcy Court.  Notwithstanding anything to the contrary in the Plan, the Confirmation Order shall be deemed a Final Order on the date it is entered by the Bankruptcy Court.

28.     "**Entity**" shall have the meaning set forth in Section 101(15) of the Bankruptcy Code.

29.     "**Estate**" means the estate created for the Debtor on the Petition Date pursuant to Section 541 of the Bankruptcy Code.

30.     "**Exculpated Parties**" means, collectively, (i) the Broker or its designee; (ii) the Proponent; (iii) the Professionals (including the Disbursing Agent); and (iv) McCarter & English, LLP.

31.     "**Executory Contract**" or "**Unexpired Lease**" means a valid contract or valid unexpired lease to which the Debtor is a party that is subject to assumption or rejection under Section 365 of the Bankruptcy Code, including any modifications, amendments, addenda or supplements thereto, and any ancillary agreements related thereto.

32.     "**File**," "**Filed**" or "**Filing**" means file, filed or filing with the Bankruptcy Court.

33.     "**Final Distribution Date**" means the first Business Day on which all Allowed Claims are paid in full.

34.     "**Final Decree**" shall have its meaning as used in Bankruptcy Rule 3022, occurring only after the Final Distribution Date.

35.     "**Final Order**" means an Order or judgment of the Bankruptcy Court (with the exception of the Confirmation Order) or a court of competent jurisdiction to hear appeals from the Bankruptcy Court that, not having been reversed, modified or amended, and not being stayed, and the time to appeal from which or to seek review or rehearing of which having expired, has become final and is in full force and effect.

36.     "**Hamaspik Escrow Reserve**" means those certain funds being held in the attorney escrow account by the law firm of Cohen, LaBarbera & Landrigan, LLP, counsel for Hamaspik of Rockland County ("Hamaspik").  As of the Confirmation Date, the amount of the Hamaspik Escrow Reserve is in excess of $200,000.

37.     "**Holder**" means a Person or Entity holding a Claim.

38.     "**Impaired**" means, with respect to a Class of Claims, that such Class is impaired within the meaning of Section 1124 of the Bankruptcy Code.

5

39.   "**IRS Lien Properties**" means, collectively or individually, those certain parcels of Real Property located in the Town of Ramapo, County of Rockland, State of New York, owned by the Debtor, listed in the Schedules and subject to the Secured Claim held by the Internal Revenue Service (but not the TD Mortgaged Properties), and commonly known as: (i) 18 Ellish Parkway; (ii) 53 Decatur Avenue; and (iii) 39 Saddle River Road.

40.   "**Lien**" shall have the meaning set forth in Section 101(37) of the Bankruptcy Code.

41.   "**Litigation**" means, collectively or individually, the actions and administrative proceedings outlined in the Disclosure Statement, and includes all actions, causes of action, controversies, liabilities, obligations, rights, suits, damages, judgments, claims and demands whatsoever, whether known or unknown, reduced to judgment, liquidated or unsecured, assertable directly or derivatively, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Effective Date. The term "Litigation" does not include any causes of action arising under Chapter 5 of the Bankruptcy Code.

42.   "**Litigation Proceeds**" means all gross proceeds, before litigation costs, fees and expenses, resulting from the conclusion, resolution, settlement or dismissal of any Litigation, and in accordance with Section 552(b) of the Bankruptcy Code.

43.   "**Net Proceeds**" means the Cash generated from the sale of any parcel of Real Property after the payment of Closing Costs. As detailed by the Plan, the Net Proceeds shall be used to pay the Claims in Classes 1 and 2 (and Classes 3, if applicable). In the event that Net Proceeds remain after payment of all Allowed Claims as directed by the Plan (including the Proponent Fee Claim), such balance shall be designated as Available Cash and used for implementing the remaining, outstanding terms of the Plan.

44.   "**Person**" shall have the meaning set forth in Section 101(41) of the Bankruptcy Code.

45.   "**Petition Date**" means February 26, 2015, the date on which the Debtor filed a petition for relief under the Bankruptcy Code, commencing the Chapter 11 Case.

46.   "**Plan**" means this Plan of Reorganization by the Proponent, and all exhibits attached hereto or referenced herein, as the same may be further amended, modified or supplemented from time to time in writing.

47.   "**Professional**" means any professional retained in the Chapter 11 Case pursuant Sections 327, 328, 330, 503 or 1103 of the Bankruptcy Code or any other professional or other Entity seeking compensation or reimbursement of expenses in connection with the Chapter 11 Case pursuant to Section 503(b)(4) of the Bankruptcy Code. The term "Professional" shall also include the Disbursing Agent, but solely in its post-Effective Date capacity.

6

48.    "**Professional Fee Claim**" means a Claim under Sections 327, 328, 330, 331, 503 or 1103 of the Bankruptcy Code for compensation of a Professional or other Entity for services rendered or expenses incurred in the Chapter 11 Case through and including the Effective Date, to the extent that such fees and expenses have not been paid pursuant to any order of the Bankruptcy Court and regardless of whether a fee application has been Filed for such fees and expenses.  To the extent that the Bankruptcy Court denies or reduces by Final Order any amount of a Professional's fees or expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Professional Fee Claim.

49.    "**Proponent**" or "**TD Bank**" means TD Bank, N.A., including (without limitation) its respective affiliates, related Entities and former and current members, managers, officers, directors, employees, agents, representatives, attorneys (both in-house and outside counsel) and advisors.

50.    "**Proponent Fee Claim**" means the Claim by the Proponent for all fees, charges and costs incurred by the Proponent, including (without limitation) attorneys' fees and costs associated with preparing, Filing, tabulating votes for (via the Balloting Agent), prosecuting, confirming and consummating the Plan under Section 503(b)(3)(D) and 503(b)(4) of the Bankruptcy Code, along with all fees, charges and costs incurred beyond the Effective Date necessary for effectuating and implementing the terms of the Plan and the Sale Procedures.  As provided for herein, the Proponent Fee Claim shall be paid as part of the Closing Costs.

51.    "**Proof of Claim**" means written proof of a Claim Filed against the Debtor in the Chapter 11 Case.

52.    "**Property of the Estate**" means all property of the Debtor pursuant to Section 541 of the Bankruptcy Code.

53.    "**Real Property**" means, collectively or individually, those certain parcels of real property owned by the Debtor and listed in the Schedules.

54.    "**Schedules**" mean the Statements of Financial Affairs and Schedules of Assets and Liabilities, as same may be amended from time to time in writing, Filed by the Debtor with the Bankruptcy Court pursuant to Bankruptcy Rule 1007.

55.    "**Secured Claim**" means a Claim that is secured by a valid Lien against or on Property of the Estate or that is subject to valid setoff under Section 553 of the Bankruptcy Code, to the extent of the value of the Holder's interest in the Estate's interest in such property or to the extent of the amount subject to valid setoff, as applicable, as determined pursuant to Section 506 of the Bankruptcy Code, and as modified by Section 1111(b) of the Bankruptcy Code, if applicable.

56.    "**TD Mortgaged Properties**" means, collectively or individually, those certain parcels of Real Property owned by the Debtor, listed in the Schedules and subject to the TD Secured Claim, which are located in the Town of Ramapo, County of Rockland, State of New York, and commonly known as: (i) 900 Route 45; (ii) 906 Route 45; (iii) 4 Milton Place;

7

(iv) 6 Milton Place; (v) 201 Route 306; and (vi) 78 South Main Street.

57.    "**TD Secured Claim**" means the Allowed Secured Claim held by the Proponent in the amount due and owing as of the Petition Date pursuant to TD Bank's Proof of Claim (which incorporates TD Bank's December 4, 2014 Judgment of Foreclosure and Sale against the Debtor (the "Foreclosure Judgment"))—plus (i) all post-petition interest at the rate of 9% per annum until the TD Secured Claim is paid in full and (ii) all post-petition fees, costs and charges (including attorneys' fees) pursuant to Section 506(b) of the Bankruptcy Code (except as otherwise recoverable as the Proponent Fee Claim) incurred by the Proponent until the TD Secured Claim is paid in full. For the avoidance of doubt, the TD Secured Claim (including any deficiency portion) is deemed to be an Allowed Claim. The TD Secured Claim will be determined and calculated as needed in connection with the Sale Procedures and payment from the Net Proceeds.

58.    "**Unimpaired**" means, with respect to a Class of Claims, that such Class is not Impaired.

59.    "**Unsecured Claim**" means any Claim against the Debtor that arose or that is deemed by the Bankruptcy Code to have arisen prior to the Petition Date, and which is not (i) a Secured Claim or (ii) a Claim entitled to priority under Sections 503 or 507 of the Bankruptcy Code. "Unsecured Claim" shall also include all Claims against the Debtor that are not expressly otherwise dealt with in the Plan.

60.    **Other Definitions**: Any term used and not defined herein but that is defined in the Bankruptcy Code shall have the meaning set forth therein. The words "herein," "hereof," "hereto," "hereunder" and others of similar import refer to the Plan as a whole and not to any particular section, subsection or clause contained in the Plan. Moreover, some terms defined herein are defined in the Article in which they are used.

## C.    Unclassified Claims

Certain types of Claims are not placed into voting Classes and are instead unclassified. They are not considered Impaired and they do not vote on the Plan because they are automatically entitled to specific treatment as provided for in the Bankruptcy Code. As such, the following Claims are not provided for in a Class of Claims, but, rather, shall be treated as follows:

### 1.    Administrative Claims

The legal rights of the Holders of Administrative Claims are unaltered by the Plan. The Debtor shall pay each Holder of an Allowed Administrative Claim (except for Professional Fee Claims or the Proponent Fee Claim) the full amount of the Allowed Administrative Claim on the Effective Date or as soon as practicable after the Effective Date from the Hamaspik Escrow Reserve—except that Allowed Administrative Claims representing obligations in the ordinary course of business shall be paid in accordance with the terms of any agreement upon which such Allowed Administrative Claim is based. Notwithstanding anything in the Plan to the contrary,

8

the Holder of an Allowed Administrative Claim may be paid on such other date and upon such other terms as may be agreed upon by the Holder of an Allowed Administrative Claim and the Proponent. The Debtor's monthly operating reports Filed in the Chapter 11 Case reflect that the Administrative Claims are minimal in amount. Moreover, the Debtor is not assuming any Executory Contracts or Unexpired Leases under Section 365 of the Bankruptcy Code, thereby obviating any necessary "cure" payments.

Any payment owed to the Internal Revenue Service for capital gains tax on the sale of the Real Property, if any, shall be paid when due by the Debtor after the Final Distribution Date.

2.    **Professional Fee Claims, Proponent Fee Claims and the Disbursing Agent**

A.    The Debtor shall pay Professionals who are entitled to compensation and reimbursement of expenses from the Estate pursuant to Section 503(b)(2) through (b)(6) of the Bankruptcy Code, in Cash, in the amount awarded to such Professional by Final Order of the Bankruptcy Court as soon as practicable after the date upon which any Order awarding such fees and expenses becomes a Final Order, in accordance with the terms of any Order entered by the Bankruptcy Court governing the payment of fees and expenses during the course of the Chapter 11 Case, and after application of any retainer received by such Professionals. The payment of all Allowed Professional Fee Claims shall be paid by the Debtor from the Hamaspik Escrow Reserve, Available Cash or the allocated portion of the Litigation Proceeds as set forth in Article II.F.3. of the Plan. Nothing herein shall preclude the Debtor and any of the Professionals from entering into an alternative agreement for payment.

B.    All applications by Professionals for Professional Fee Claims shall be Filed with the Bankruptcy Court within sixty (60) days after the Effective Date. Any such application not filed within this deadline or as extended by the Bankruptcy Court shall be deemed waived, and the Holder of such Professional Fee Claim shall be forever barred from receiving payment on account thereof. The Proponent shall have standing to object, and reserves all rights to object, to all Professional Fee Claims before same become Allowed.

C.    The Proponent Fee Claim shall be paid in part by the Closing Costs, Net Proceeds and, if necessary, the Litigation Proceeds in accordance with Article II.F.3 and any Available Cash. The Proponent agrees to be paid on the Proponent Fee Claim after the Effective Date; however, the Final Distribution Date shall not occur if the Proponent Fee Claim has not been satisfied in full.

D.    The Disbursing Agent shall be entitled to recover reasonable fees and costs incurred after the Effective Date; accordingly, the Disbursing Agent does not hold an Administrative Claim for purposes of Plan confirmation. Instead, the Disbursing Agent shall submit a notice of its post-Effective Date reasonable fees, costs and expenses (the "Disbursing Agent's Claim") by Filing an itemized statement with the Bankruptcy Court no less than thirty (30) days prior to the Final Distribution Date. If no objection to the notice of the Disbursing Agent's Claim is Filed within seven (7) Business Days of its Filing, then same shall be deemed Allowed and the Disbursing Agent shall be paid on same from the Litigation Proceeds and Available Cash on the Final Distribution Date. If an objection to the Disbursing Agent's Claim

ME1 20730118v.1

is Filed, then it shall be considered Disputed and not paid until the Bankruptcy Court determines so and in what amount. The Disbursing Agent shall reserve from the Litigation Proceeds or Available Cash the amount of its then Disputed Disbursing Agent's Claim. Until all Claims held by the Proponent are paid in full, the Proponent has standing to object to the Disbursing Agent's Claim.

3.    **Statutory Fees**

On or before the Effective Date, any outstanding Administrative Claims for fees payable pursuant to 28 U.S.C. §1930 shall be paid by the Debtor from the Hamaspik Escrow Reserve or Available Cash.

4.    **Real Property Taxes**

The County of Rockland and the Town of Ramapo (together, "Rockland County") hold a Claim for unpaid County, Town or School taxes (collectively the "Real Property Tax Claims"), which Claim is secured in part by Liens against several parcels of the TD Mortgaged Properties. As of March 2015, the Proponent believes that the amount of the Real Property Tax Claims is in excess of $577,000, consisting of the following amounts owed on the following parcels of the TD Mortgaged Properties:

| | | |
|---|---|---|
| o | 78 South Main St: | $35,237 |
| o | 6 Milton Place: | $3,950 |
| o | 201 Route 306: | $12,912 |
| o | 900 Route 45: | $500,265 |
| o | 906 Route 45: | $25,004 |
| | Total: | $577,368 |

These figures for the Real Property Tax Claims include the amounts listed by the Debtor in its Schedules specifically relating to the Town of Ramapo and its scheduled Claim for unpaid "Local Taxes" in the amount of $31,418.72. The Schedules reveal that the Debtor is challenging these Local Taxes (and possibly other Real Property Tax Claims) in pending Litigation, and has retained special counsel in the Chapter 11 Case to address and possibly litigate same.

Under the Plan, when a particular parcel of the TD Mortgaged Properties is sold, the allocated portion of the Allowed Real Property Tax Claims secured by such specific Real Property will be paid in full from the Closing Costs. To the extent that a portion of the Real Property Tax Claims is not Allowed at the time of the respective Closing Dates—either because of the Litigation or otherwise (e.g., the Bar Date for governmental units to File Proofs of Claim has not expired)—the Broker shall cause the Disbursing Agent to reserve for such Claims from the respective Closing Costs and to be held in the Disputed Claims Reserve (defined below).

The Closing Costs from one particular parcel of the TD Mortgaged Properties shall not be used to pay the portion of the Real Property Tax Claims that relate to a separate parcel of the TD Mortgaged Properties.

10

## D.    Classes of Claims: Classification, Treatment and Voting Rights

The following chart outlines the classification, treatment and voting rights of the Classes of Claims subject to the Plan:

| CLASS | DESCRIPTION | STATUS / ENTITLE TO VOTE | TREATMENT |
|---|---|---|---|
| 1.<br><br>Secured Claim of TD Bank, N.A. | TD Bank holds an Allowed Secured Claim, secured by, among other things, the TD Mortgaged Properties, the Litigation Proceeds and the Foreclosure Judgment.<br><br>As of the Petition Date, the TD Secured Claim is in the amount of no less than $9,224,289.16.<br><br>Also included in the TD Secured Claim is (i) post-petition interest at 9% per annum and (ii) post-petition attorneys' fees and other fees, costs and charges pursuant to 11 U.S.C. §506(b). | Impaired<br><br>Entitled to Vote | 100%. The TD Mortgaged Properties shall be sold in accordance with the Sale Procedures.  The Net Proceeds shall be used to pay the TD Secured Claim in full (after payment for any Allowed Real Property Tax Claims attributed to specific parcels of the TD Mortgaged Properties).  The Litigation Proceeds shall also be used to satisfy the TD Secured Claim.<br><br>*All pre-petition Liens in all respects held by TD Bank and those arising from the Foreclosure Judgment shall remain in full force and effect beyond the Effective Date until the TD Secured Claim is paid in full.*<br><br>To the extent that the total Net Proceeds from the TD Mortgaged Properties, the Litigation Proceeds or other collateral are less than the amount of the TD Secured Claim, the deficiency portion of the TD Secured Claim shall be treated as an Allowed Unsecured Claim in Class 5. |
| 2.<br><br>Secured Claim | The Department of Treasury – Internal Revenue Service (the "IRS") holds an Allowed | Impaired<br><br>Entitled to Vote | 100%. The IRS Lien Properties shall be sold in accordance with the Sale |

11

| | | | |
|---|---|---|---|
| of the Internal Revenue Service | Secured Claim, secured in part by the IRS Lien Properties and a valid second Lien against the TD Mortgaged Properties.<br><br>As of the Petition Date, the Allowed Secured Claim of the IRS is in the amount of no less than $255,052.87 (the "IRS Secured Claim").<br><br>The IRS's Proof of Claim does not indicate a demand for post-petition interest; however, to the extent that the IRS Secured Claim is entitled to post-petition interest under applicable law, the IRS Secured Claim shall include same. | | Procedures, and the Net Proceeds shall be used to pay the IRS Secured Claim in full.<br><br>Any Net Proceeds from the TD Mortgaged Properties that may exist after satisfying the TD Secured Claim in full shall be used to pay the IRS Secured Claim.<br><br>To the extent that the total Net Proceeds from the IRS Lien Properties (or from the TD Mortgaged Properties after payment on the TD Secured Claim) are less than the amount of the IRS Secured Claim, such deficiency portion shall be treated as an Allowed Unsecured Claim in Class 5.<br><br>To the extent that there are excess Net Proceeds from the sale of the IRS Lien Properties after payment in full of the IRS Secured Claim, the excess Net Proceeds shall be designated as Available Cash. |
| 3.<br><br>Mechanic's Claims | (A) All Security & Communications Corp. and (B) Countrywide Carting Ltd. are scheduled as holding Disputed Secured Claims (together the "Mechanic's Claims") in the amount of $57,221.96 and $5,563, respectively.<br><br>The Mechanic's Claims are scheduled as being secured by | Impaired<br><br>Entitled to Vote | Disputed. If and when the Mechanic's Claims become Allowed Claims, then any Net Proceeds from the sale of the 201 Route 306 property that may exist after satisfying in full (i) the Closing Costs, (ii) the portion of the Allowed Real Property Tax Claims associated with 201 Route 306 and (iii) the TD |

12

MEI 20730118v.1

| | | | |
|---|---|---|---|
| | liens against Real Property known as the "201 Route 306" property, a parcel of the TD Mortgaged Properties. | | Secured Claim, shall be used to pay the Allowed Mechanic's Claims.<br><br>Any deficiency portion of the Allowed Mechanic's Claims shall be treated as an Allowed Unsecured Claim in Class 5. |
| 4.<br><br>Secured Claim of TCF Equipment Finance, a division of TCF National Bank | TCF Equipment Finance, a division of TCF National Bank ("TCF"), holds an Allowed Secured Claim, secured by four vehicles owned by the Debtor (collectively, the "Vehicles").<br><br>As of the Petition Date, TCF's Allowed Secured Claim is in the amount of $143,154.90 (the "TCF Secured Claim"). | Impaired<br><br>Entitled to Vote | 100%. TCF shall repossess the Vehicles and apply the collective fair market value of the Vehicles to satisfy the Allowed TCF Secured Claim.<br><br>Any deficiency portion of the Allowed TCF Secured Claim shall be treated as an Allowed Unsecured Claim in Class 5. |
| 5.<br><br>General Unsecured Claims | Allowed Claims for Holders of General Unsecured Claims, estimated in the amount of $1,000,000 (plus any deficiency portion from Classes 1-4). | Impaired<br><br>Entitled to Vote | 100%. Payment in full from the Available Cash or the Litigation Proceeds. |
| 6.<br><br>Equity Interests | The Debtor is a non-profit organization and there are no Holders of equity interests. | Not Applicable | All Property of the Estate that remains after the Final Distribution Date shall become property of the Debtor, as reorganized. |

## E.    Acceptance or Rejection of the Plan

Each Impaired class of Creditors with Claims against the Estate shall be entitled to vote separately to accept or reject the Plan. A Class of Creditors shall have accepted the Plan if the Plan is accepted by at least two-thirds in the aggregate dollar amount and more than one-half in number of Holders of the Allowed Claims of such Class that have voted to accept or reject the Plan. In the event that any Impaired Class of Creditors shall fail to accept the Plan in accordance with Section 1129(a) of the Bankruptcy Code, the Proponent reserves the right to request that the Bankruptcy Court confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code. All voting must be in accordance with the Disclosure Statement Order.

MEI 20730118v.1

## F.  Means of Implementing the Plan

### 1.  Funding the Plan

The Plan will be funded in part by: (i) the Hamaspik Escrow Reserve; (ii) the Closing Costs and Net Proceeds from the sale of the Debtor's Real Property; (iii) the Litigation Proceeds; and (iv) Available Cash (including charitable donations from the Debtor's community and members and revenue from the Debtor's lease agreements, if any).

### 2.  The Sale Procedures

The following chart (the "Real Property Chart") details the Real Property owned by the Debtor and to be sold, free and clear of all claims, liens and interests, subject to the Plan:

| Property | Description and Debtor's Scheduled Values | Classification |
|---|---|---|
| **"Tier One Properties"** | | |
| 1.  900 Route 45 | Religious Girl's School, $4,500,000. | TD Mortgaged Properties |
| 2.  906 Route 45 | Single-Family Residential, $200,000 | TD Mortgaged Properties |
| 3.  78 South Main St. | School for Special Needs Children, $2,000,000 | TD Mortgaged Properties |
| 4.  201 South 306 | Yeshiva/Religious Boy's School, $10,000,000 | TD Mortgaged Properties |
| 5.  18 Ellish Parkway | Single-Family Residential, $1,000,000 | IRS Lien Properties |
| 6.  53 Decatur Ave | Residential Building, $500,000 | IRS Lien Properties |
| 7.  39 Saddle River Rd | Two-Family Residential, $500,000 | IRS Lien Properties |
| **"Tier Two Properties"** | | |
| 8.  4 & 6 Milton Place | Synagogue and Parking Lot, $8,000,000 | TD Mortgaged Properties |
| **Debtor's Total Opinion of Value: $26,700,000** | | |

The following sale procedures (the "Sale Procedures") are to be implemented by the Proponent for the sale of the Real Property and for generating the Net Proceeds:

1. The Sale Procedures shall be overseen and conducted solely by the Proponent, the Broker or as otherwise designated by the Proponent. The Debtor shall have no involvement or input with the sale of the Real Property. By virtue of the Confirmation Order, the Sale

14

Procedures will be deemed approved by the Bankruptcy Court.

2. All Real Property listed as the "Tier One Properties" in the Real Property Chart shall be sold by the Broker. The Proponent will appoint a Broker, with the approval of the Bankruptcy Court, to sell the Tier One Properties and generate Net Proceeds sufficient to satisfy the Allowed Claims in Classes 1 through 5. Net Proceeds from the sale of the 201 Route 306 property shall be used to satisfy the Mechanic's Claims (upon becoming Allowed) in accordance with the terms of the Plan, if there are sufficient Net Proceeds from such sale.

3. Immediately upon the Effective Date, the Broker shall list and market the Tier One Properties for sale. The Broker will have 45 days after the Effective Date (the "45-Day Period") to yield a purchaser or purchasers (the "Stalking Horse(s)") for any of the Tier One Properties. (The Proponent reserves the right to extend the 45-Day Period.) Any Stalking Horse must provide the Broker with such financial information or other information that the Broker deems necessary to establish the ability to consummate the Closing of the respective Tier One Properties (the "Qualifications"). The Broker shall be authorized to provide interested parties with such due diligence and access to the Tier One Properties (whether during the 45-Day Period or prior to any Auction, discussed below) as the Broker in its discretion deems necessary and appropriate. The Debtor shall permit the Broker or its prospective purchaser(s), professionals and other necessary parties full and complete access to all of the Tier One Properties so that prospective purchasers may conduct necessary due diligence as part of any agreement to purchase same.

4. For each of the respective Tier One Properties, the Broker (upon consultation with and acceptance by the Proponent) shall only accept a Stalking Horse(s)' offer to purchase the respective Tier One Properties that is in an amount of at least the appraised value of the Proponent's 2015 Appraisals for the respective Tier One Properties.[1]

5. Provided that a purchase offer is in an amount of at least the 2015 Appraisals for the respective Tier One Properties, the Broker shall enter into purchase agreement(s) (the "Purchase Agreement(s)") with any Stalking Horse for the sale of the respective Tier One Properties. All Purchase Agreements with any Stalking Horse may include in its terms a break-up fee of no more than three percent (3%) of the proposed purchase price and an expense reimbursement for its documented out of pocket expenses (together, the "Break-Up Fee").

6. Any Purchase Agreement with a Stalking Horse shall be subject to (a) higher and better offers and (b) approval by the Bankruptcy Court. For an offer to be higher and better, it must be for more than the aggregate of the purchase price plus the Break-Up Fee. Within ten (10) Business Days of execution of a Purchase Agreement, the Broker shall File a

---

[1] As the Disclosure Statement explains, the appraisals of the TD Mortgaged Properties dated as of February 2015 and obtained by the Proponent (the "2015 Appraisals") are not subject to disclosure; however, the Proponent does note that such values are less than those listed in the Schedules by the Debtor.

Notice with the Bankruptcy Court, pursuant to Local Bankruptcy Rule 2002-2, on notice to the New York Attorney General's Office and all parties in interest (including parties with any alleged lease interest in the Tier One Properties), setting forth (i) the Real Property to be sold, (ii) the name of the Stalking Horse, (iii) the purchase price, (iv) the minimum price to be a higher or better offer, (v) a deadline, which shall be at least thirty (30) calendar days after the date of such Notice, for submission of higher and better offers, (vi) a date, which shall be no more than ten (10) calendar days after expiration of the foregoing thirty (30) day period, for the Broker to receive any further bids from those parties who have submitted higher and better offers, and from the Stalking Horse and (vii) the earliest possible Bankruptcy Court hearing date thereafter to consider approval of the highest and best offer for the purchase of the respective Tier One Properties.

7.  All Orders (the "Sale Orders") approving Purchase Agreements, either with a Stalking Horse or such alternate purchaser (in either case, the "Successful Purchaser"), shall: (i) authorize payment of the Closing Costs (including the Proponent Fee Claim); (ii) provide that the Broker is authorized to execute and deliver all documents and instruments on the Debtor's behalf as necessary to effectuate the Closing; (iii) provide that the sale of the Tier One Properties be declared tax exempt pursuant to Section 1146(c) of the Bankruptcy Code; and (iv) waive the 14-day stay imposed by Bankruptcy Rule 6004(h), among other provisions that may be deemed reasonably necessary by the Proponent and approved by the Bankruptcy Court.

8.  All Sale Orders shall also provide that the sale of the Tier One Properties are being approved free and clear of all liens, claims and encumbrances, including (without limitation) any unexpired property rights of tenants or licensees under Section 365 of the Bankruptcy Code, if any.  Any Claims for rejection damages available to such tenants or licensees under Sections 365 and 502(g) of the Bankruptcy Code shall be Filed with the Bankruptcy Code with thirty (30) calendar days after the entry of such Sale Order.

9.  If the 45-Day Period expires without the Broker entering into Purchase Agreement(s) for the Tier One Properties, then on the first Business Day after the 45th day following the expiration of the 45-Day Period (i.e., approximately ninety (90) days after the Effective Date), the Broker or its designee shall conduct a public auction (the "Auction") for the sale of any of the unsold Tier One Properties.  During the period preceding the date of the Auction, the Broker shall market the remaining Tier One Properties in such a manner so as to generate a reasonable price for each of the Tier One Properties.  In accepting any such bid, the Broker shall not be bound by the 2015 Appraisals and may accept bids in an amount less than the 2015 Appraisals.  The Proponent shall have the right to credit bid pursuant to Sections 363(k) of the Bankruptcy Code at the Auction.

10. At the conclusion of the Auction, the Broker (upon consultation with and acceptance by the Proponent) shall select the highest or otherwise best offer and enter into Purchase Agreement(s) with the Successful Purchaser(s).  Thereupon, the Broker shall submit a proposed Sale Order (consistent with these Sale Procedures) for the Bankruptcy Court to enter, on notice only to the New York State Attorney General's Office. Following entry of such Sale Order, the Broker shall be authorized to consummate the Closing.

16

11. With each Closing of the respective Tier One Properties that constitute the TD Mortgaged Properties, the Net Proceeds shall be used first to pay the accrued post-petition interest on the TD Secured Claim and then to pay the remaining amounts owed on the TD Secured Claim. After payment of the TD Secured Claim, any remaining Net Proceeds shall be applied, in the following order, to (i) the IRS Secured Claim, (ii) the Mechanic's Claims (if Allowed and if the 201 Route 306 property is the property being sold) and (iii) any Proponent Fee Claim that may not have otherwise been satisfied in full from other Closings, with all Net Proceeds remaining thereafter to be designated as Available Cash.

12. With each Closing of the respective Tier One Properties that constitute the IRS Lien Properties, the Net Proceeds shall be used to pay the IRS Secured Claim in full. In the event that Net Proceeds remain after payment in full of the IRS Secured Claim and any outstanding Proponent Fee Claim, then such remaining Net Proceeds shall be designated as Available Cash.

13. The TD Secured Claim shall continue to be secured by the Real Property listed as the "Tier Two Properties" in the Real Property Chart. If the Net Proceeds from the sale of the Tier One Properties are insufficient to pay the TD Secured Claim in full, then immediately following the Closing of the last Tier One Properties, the remaining amount of the TD Secured Claim shall be calculated. The Debtor or Disbursing Agent shall have forty-five (45) days thereafter to pay the Proponent the amount of such remaining Claim. If the Debtor or Disbursing Agent fails to make such payment, the Proponent may proceed to a foreclosure sale of the Tier Two Properties in accordance with the Foreclosure Judgment.

14. The Proponent reserves the right to modify the Sale Procedures as may be necessary to address unforeseen issues relating to the sale of the Real Property, without prior Bankruptcy Court approval, so long as such modifications do not materially affect the Sale Procedures.

3.    **The Litigation and Litigation Proceeds**

Under the Plan, the Debtor shall remain in control of the Litigation after the Effective Date. However, all resolutions, settlements, dismissals and any other disposition of the Litigation shall first be approved by the Bankruptcy Court, on notice to the Proponent and other parties in interest.

Further, notwithstanding that the TD Secured Claim is secured by the Debtor's choses in action and general intangibles and that any rents generated from the TD Mortgaged Properties constitute TD Bank's property, under the Plan, all Litigation Proceeds resulting from the Litigation shall be used to fund the Plan in the following manner:

17

A. The first 25% of the Litigation Proceeds shall be used to pay the TD Secured Claim and Proponent Fee Claim (if any balance remains after payment from Closing Costs or the Net Proceeds), without further Order of the Bankruptcy Court; if the TD Secured Claim has already been satisfied, this 25% shall be designated as Available Cash;

B. The next 25% of the Litigation Proceeds shall be designated as Available Cash; and

C. The remaining 50% portion of the Litigation Proceeds shall be used to fund the reasonable costs and expenses relating to the Litigation, including payment for any Professionals' Claims arising after the Effective Date—subject to prior Bankruptcy Court approval by way of supplemental fee applications on notice to the Proponent and all parties in interest—with any remaining balance being designated as Available Cash.

The Debtor is directed to turn over all Litigation Proceeds to the Disbursing Agent to be applied in accordance with the Plan. The Disbursing Agent shall hold the Litigation Proceeds in a segregated escrow account prior to making any distributions from the Litigation Proceeds. On the 15th day of each month after the Effective Date, the Debtor and/or Disbursing Agent shall provide the Proponent and its counsel with status updates regarding the Litigation and the balance of the Litigation Proceeds.

To the extent that the Debtor commences causes of action arising under Chapter 5 of the Bankruptcy Code (the "Avoidance Actions"), the Debtor may enforce and prosecute same. Any proceeds generated from the Avoidance Actions shall be designated as Available Cash, and all related fees, costs and expenses shall be paid from the Available Cash..

4.    **Disbursing Agent**

The law firm of Pick & Zabicki LLP shall serve as the Disbursing Agent for the purpose of making distributions to Holders of Allowed Claims (including distributions from the Litigation Proceeds), unless as otherwise provided for under the Plan. The Disbursing Agent shall post no bond and shall be reimbursed for its reasonable fees, costs and expenses pursuant to Article II.C.2. of the Plan, which shall be separate and apart from any Professional Fee Claims arising by the law firm of Pick & Zabicki LLP in its capacity as counsel for the Debtor. The Disbursing Agent shall serve as a fiduciary to all Holders of Allowed Claims. For the avoidance of doubt, the Broker, and not the Disbursing Agent, shall be responsible for distributing payments relating to the Closing Costs and Net Proceeds.

G.    **Unsecured Claims**.

1.    **Objections to Claims**

The Debtor—or the Disbursing Agent, on behalf of the Debtor—shall be responsible for pursuing objections to any Disputed Unsecured Claims not Allowed as of the Effective Date, ***except as to*** (i) any challenge to the TD Secured Claim and (ii) any Claims relating to the Sale

18

Procedures or effectuating the terms thereof. To the extent applicable, the Debtor or the Disbursing Agent may also continue with any Litigation relating to any Disputed Real Property Tax Claims.

2.      **Filing Objections**

Concerning any Disputed Unsecured Claims, the Debtor or the Disbursing Agent shall File and serve all objections to the Allowance of such Claims no later than ninety (90) days after the Effective Date, unless as otherwise ordered by the Bankruptcy Court.

An objection to a Disputed Unsecured Claim shall be deemed properly served on the Holder of such Claim if the Debtor or the Disbursing Agent effects service of such objection in accordance with Bankruptcy Rule 3007 by mailing or otherwise delivering the objection and a notice of hearing thereon to the claimant at the address set forth on such Holder's Proof of Claim at least thirty (30) days prior to the hearing thereon. The Debtor or the Disbursing Agent may also effectuate service of an objection to a Disputed Unsecured Claim: (i) in accordance with Rule 4 of the Federal Rule of Civil Procedure, as modified and made applicable by Bankruptcy Rule 7004; (ii) to the extent counsel for a Holder is unknown, by first-class mail, postage prepaid, to the signatory on the Proof of Claim or other representative identified on the Proof of Claim or any attachment thereto; or (iii) by first-class mail, postage prepaid, on counsel that has appeared on behalf of such Holder in the Chapter 11 Case.

3.      **Disallowance of Claims Without Further Order of the Court**

As of the Effective Date, any Scheduled Claim designated as disputed, contingent or unliquidated in amount, and for which a Proof of Claim has not been Filed by the Bar Date, shall be deemed expunged, without further act or deed. All Claims listed on the Schedules that correspond to a Proof of Claim filed by a particular Holder shall be deemed to have been superseded by such later filed Proof of Claim and the Claims listed on the Schedules, regardless of priority, shall be expunged from the claims register; provided, however, that such Proofs of Claim shall be subject to objection in accordance with the Plan.

4.      **Disputed Claims Reserve**

(a) Except to the extent the Bankruptcy Court determines that a lesser amount is adequate, the Disbursing Agent shall create and maintain a segregated account (the "Disputed Claims Reserve") and deposit in the Disputed Claims Reserve such funds as would be necessary to make the required distribution on the Claim if Allowed, as listed either in the Schedules or the Filed Proof(s) of Claim, whichever is greater.

(b) For purposes of effectuating the provisions of the Plan and the distributions to Holders of Allowed Claims, the Bankruptcy Court may liquidate the amount of Disputed Unsecured Claims pursuant to Section 502(c) of the Bankruptcy Code, in which event the amounts so fixed or liquidated shall be deemed to be the amounts of the Disputed Unsecured Claims pursuant to Section 502(c) of the Bankruptcy Code for purposes of distribution under the Plan and for purposes of the Disputed Claims Reserve.

19

(c) When a Disputed Unsecured Claim becomes an Allowed Claim, there shall be distributed to the Holder of such Allowed Claim, in accordance with the provisions of the Plan, Cash in the amount of all distributions to which such Holder would have been entitled if such Holder's Claim were Allowed on the Effective Date, to the extent of Available Cash to make such distribution.

(d) In no event shall any Holder of any Disputed Unsecured Claim be entitled to receive (under the Plan or otherwise) any Cash payment that is greater than the amount reserved, if any, for such Disputed Unsecured Claim pursuant to the Plan. In no event shall the Disbursing Agent have any responsibility or liability for any loss to or of any amount reserved under the Plan unless such loss is the result of the Disbursing Agent's fraud, willful misconduct, breach of fiduciary duty or gross negligence. In no event may any Creditor whose Disputed Unsecured Claim is subsequently Allowed, pursue or recover or from any other Creditor in respect of any funds received as distributions under the Plan.

(e) The Disputed Claims Reserve shall be treated as a disputed ownership fund, within the meaning of Treasury Regulation Section 1.468B-9 (i.e., disputed ownership funds), for all purposes associated with taxation.

(f) The Disbursing Agent shall pay, or cause to be paid, out of the funds held in the Disputed Claims Reserve, any tax imposed by any federal, state or local taxing authority on the income generated by the funds or property held in the Disputed Claims Reserve. The Disbursing Agent shall file, or cause to be filed, any tax or information related to the Disputed Claims Reserve that is required by any federal, state or local tax authority.

(g) To the extent that funds or property remain in the Disputed Claims Reserve after the Allowance of such related Disputed Unsecured Claims, such funds or property shall constitute Available Cash and be returned to the Debtor as its property as of the Final Distribution Date.

**H.    Plan Distributions by the Disbursing Agent**

1.    **General**

As and when authorized by a Final Order, Disputed Claims that become Allowed Claims shall be paid in accordance with the Plan. No distribution shall be made on a Claim where only a portion of such Claim is Disputed until such Dispute is resolved by settlement or Final Order.

When there exists Available Cash sufficient to satisfy at least 25% of the total Allowed Claims in Class 5, the Disbursing Agent shall make a pro rata distribution to Holders of Allowed Claims in Class 5.

2.    **No Payments of Fractional Cents**

Any contrary provision hereof notwithstanding, for purposes of administrative convenience, no payment of fractional cents shall be made pursuant to the Plan. Whenever any payment of a fraction of a cent under the Plan would otherwise be required, the actual distribution made shall reflect a rounding of such fraction to the nearest whole penny (up or

MEI 20730118v.1

down), with halfpennies or less being rounded down and fractions in excess of half of a penny being rounded up.

3.      **Setoff and Recoupment**

Except as otherwise provided in the Plan, the Disbursing Agent may, but shall not be required to, set off against, or recoup from, any Claim and the distributions to be made pursuant to the Plan in respect thereof, any Claims or defenses of any nature whatsoever that the Estate may have, but neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release of any right of setoff or recoupment against the holder of any Claim.

4.      **Payment of Taxes on Distributions Received Pursuant to the Plan**

(a) Any contrary provision hereof notwithstanding, as a precondition to payment of any distribution to a Creditor under the Plan, unless included on the official Proof of Claim form Filed by such Creditor in the Chapter 11 Case, each Creditor shall provide a valid tax identification or social security number (collectively the "Tax Information") for purposes of tax reporting by the Disbursing Agent. All Entities that receive distributions under the Plan shall be responsible for reporting and paying, as applicable, any taxes on account of their respective distributions.

(b) The Disbursing Agent shall request Tax Information in writing from the Creditors (the "Tax Info Request"). Any Creditor who fails to respond to the Tax Info Request within ninety (90) days from the date posted on the Tax Info Request, shall forfeit all distributions that such Creditor may otherwise be entitled to under the Plan, and such forfeited funds will revert to being Available Cash to be disbursed or used in accordance with the terms of the Plan.

5.      **Compliance With Tax Withholding and Reporting Requirements**

Concerning all distributions made under the Plan, the Disbursing Agent shall comply with all withholding and reporting requirements of any federal, state or local taxing authority.

**ARTICLE
III.**

**TREATMENT OF MISCELLANEOUS ITEMS**

A.      **Executory Contracts and Unexpired Leases**

All Executory Contracts and Unexpired Leases shall be rejected under the Plan.

Any party to an Executory Contract or Unexpired Lease that is being rejected in accordance with the Plan shall File a Proof of Claim for damages from such rejection no later than either thirty (30) days after the Effective Date or thirty (30) days after entry of the Sale Order, as applicable. The failure to File a Proof of Claim shall be deemed a waiver of any Claim in connection with the rejection of such Executory Contract or Unexpired Lease.

21

**B.      Changes in Rates Subject to Regulatory Commission Approval**

The Debtor is not subject to governmental regulatory commission approval of its rates.

**C.      Retention of Jurisdiction.**

From the Effective Date until entry of the Final Decree closing the Chapter 11 Case, the Bankruptcy Court shall retain jurisdiction of the Chapter 11 Case for the following purposes:

  i.  To hear and determine any and all objections to the Allowance of any Claim (including, without limitation, Administrative Claims and Professional Fee Claims) or any controversy as to the classification of Claims or any matters that may directly, indirectly or contingently affect the obligations of the Debtor to any Creditors, Holders of Claims or other parties in interest;

  ii.  To hear and determine any and all applications for compensation and reimbursement of expenses by the Professionals, the Proponent, the Balloting Agent (if applicable) or the Disbursing Agent;

  iii.  To adjudicate through final judgment any contested matters or adversary proceedings as may be pending or subsequently initiated in the Bankruptcy Court—including, without limitation, the Litigation and Avoidance Actions, if applicable—and to grant any and all Orders, releases, injunctions and exculpations similar in scope to the releases, injunctions and exculpations that may have been granted by Orders of the Bankruptcy Court prior to the Effective Date;

  iv.  To enforce and interpret the provisions of the Plan and the Confirmation Order;

  v.  To hear and determine any matter relating to the Sale Procedures and effectuating same;

  vi.  To issue any injunction or other relief appropriate to implement the intent and purpose of the Plan, and to enter such further Orders enforcing any injunctions or other relief issued under the Plan or pursuant to the Confirmation Order;

  vii.  To interpret and determine such matters as the Confirmation Order may provide for, or as may be authorized under the Bankruptcy Code; and

  viii.  To enter and implement such Orders as may be appropriate in the event that the Confirmation Order is, for any reason, stayed, reversed, revoked modified or vacated.

In addition, the Bankruptcy Court shall retain jurisdiction to implement the provisions of the Plan in the manner as provided under Section 1142(a) and (b) of the Bankruptcy Code.  If the

ME1 20730118v.1

Bankruptcy Court abstains from exercising, or declines to exercise jurisdiction, or is otherwise without jurisdiction over any matter set forth in this Article, then this provision of the Plan shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court, public authority or commission having competent jurisdiction over such matters.

**D.    Notices under the Plan**

All notices, requests or demands with respect to the Plan shall be in writing and shall be deemed to have been received within five (5) Business Days of the date of mailing, provided they are sent by registered mail or certified mail, postage prepaid, return receipt requested and if sent to counsel for the Proponent, addressed to:

**McCarter English, LLP**
Joseph Lubertazzi, Jr., Esq.
Matthew Heimann, Esq.
100 Mulberry Street
Four Gateway Center
Newark, New Jersey 07102
jlubertazzi@mccarter.com
mheimann@mccarter.com

**ARTICLE
IV.**

**EFFECT OF CONFIRMATION OF PLAN**

**A.    Discharge**

Upon the Final Distribution Date, the Debtor shall be discharged of liability for payment of debts incurred before the Effective Date to the extent specified in 11 U.S.C. §1141. Any liability imposed by the Plan will not be discharged, however. If the Plan is not confirmed, the Plan shall be deemed null and void. In such event, nothing contained in the Plan shall be deemed to constitute a waiver or release of any Claims against the Debtor or the Estate or any other Persons, or to prejudice in any manner the rights of the Debtor or the Estate or any person in any further proceeding involving the Debtor or the Estate. The provisions of the Plan shall be binding upon the Debtor and all Creditors, regardless of whether such Claims are Impaired or whether such parties have voted to accept the Plan.

**B.    Revesting of Property in the Debtor**

Except as otherwise provided for in the Plan, Property of the Estate revests in the Debtor as of the Final Distribution Date. For the avoidance of doubt, all Liens in effect as of the Petition Date shall remain in full force and effect until such Allowed Claims secured by the Liens are satisfied in full.

23

**C.     Effectuating Documents; Further Transactions**

The Debtor is authorized and directed to comply with the Sale Procedures and cooperate with the Proponent, the Broker and any purchasers of Real Property, and shall execute, deliver, File (or file) or record all necessary contracts, instruments, releases and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, or to otherwise comply with applicable law.

The Broker or its designee is authorized to execute, deliver, File (or file) or record such contracts, instruments, releases, indentures and other agreements or documents, and to take such actions as may be necessary or appropriate to effectuate, implement and further evidence the Sale Procedures and other terms of the Plan, or to otherwise comply with applicable law.

**D.     Modification of the Plan**

The Proponent may modify the Plan at any time before the Confirmation Hearing. However, the Bankruptcy Court may require a new Disclosure Statement or revoting on the Plan if the Proponent materially modifies the Plan before the Confirmation Hearing.

**E.     Post-Confirmation Dismissal**

A Creditor or party in interest may bring a motion to dismiss the Chapter 11 Case under Section 1112(b) of the Bankruptcy Code, after the Confirmation Date, if there is a default in performing under the Plan.

**F.     Post-Confirmation Quarterly Fees, Reports and Management**

The Debtor shall be responsible for payment of all quarterly fees pursuant to 28 U.S.C. §1930(a)(6) and same shall continue to be payable to the Office of the United States trustee post-Confirmation until such time as the Chapter 11 Case is dismissed or closed pursuant to a Final Decree.

Until the entry of a Final Decree, the Debtor shall submit all Monthly Operating Reports to the U.S. Trustee as required by the U.S. Trustee guidelines (with a copy served on the Proponent).

The Effective Date is also the same date on which the Confirmation Order is entered. Therefore, post-Confirmation, pursuant to Section 1141 of the Bankruptcy Code, the Debtor shall continue with its business and manage its affairs without further supervision of the Bankruptcy Court, subject to the terms of the Plan, which shall be binding on the Debtor. Notwithstanding the preceding sentence, the Debtor shall have no involvement with Sale Procedures.

The Debtor, and not the Proponent, shall be responsible for complying with all applicable non-bankruptcy law, and for filing and amending all documents and instruments with the appropriate governmental units necessary for effectuating the existence and authority of the

24

Debtor, if required under applicable non-bankruptcy law.

For the avoidance of doubt, the Debtor shall be deemed to operate as a fiduciary to all Creditors and Holders of Allowed Claims following the Effective Date and be obligated to perform all terms and conditions of the Plan, notwithstanding the occurrence of the Effective Date.

Further, the Debtor shall provide the Proponent with written status updates on all matters relating to the Plan no later than seven (7) Business Days following the Proponent's request for same, and the Debtor shall appear at all post-Confirmation status conferences before the Bankruptcy Court that may be required or requested.

## G.    Severability of Plan Provisions

If, prior to the Confirmation Date, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, on its own motion or at the request of the Proponent, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may be altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

## H.    Injunction

**EXCEPT AS PROVIDED IN THE PLAN OR CONFIRMATION ORDER, THE CONFIRMATION ORDER SHALL ACT AS AN INJUNCTION AGAINST THE COMMENCEMENT OR CONTINUATION OF ANY ACTION, EMPLOYMENT OF PROCESS OR ACT TO COLLECT, OFFSET OR RECOVER A CLAIM AGAINST THE DEBTOR. EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ALL PERSONS WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS AGAINST THE DEBTOR OR ITS ASSETS OR PROPERTY SHALL BE PERMANENTLY ENJOINED, ON AND AFTER THE EFFECTIVE DATE, FROM (A) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND WITH RESPECT TO ANY SUCH CLAIM, (B) THE ENFORCEMENT, ATTACHMENT, COLLECTION OR RECOVERY BY ANY MANNER OR MEANS OF ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST THE DEBTOR ON ACCOUNT OF ANY SUCH CLAIM AND (C) CREATING, PERFECTING OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST THE DEBTOR OR AGAINST ITS PROPERTY OR INTERESTS IN PROPERTY ON ACCOUNT OF ANY SUCH CLAIM, EXCEPT TO ENFORCE THE PROVISIONS OF THIS PLAN.**

I.    **Exculpation**

ON THE EFFECTIVE DATE, EACH OF THE EXCULPATED PARTIES ARE GRANTED THE PROTECTIONS AND BENEFITS OF SECTION 1125(E) OF THE BANKRUPTCY CODE.

J.    **Releases**

ON THE DATE OF ENTRY OF THE FINAL DECREE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, NONE OF THE EXCULPATED PARTIES SHALL HAVE OR INCUR LIABILITY FOR, AND ARE HEREBY RELEASED FROM ANY OBLIGATION TO ONE ANOTHER, TO ANY HOLDER OF A CLAIM OR ANY OTHER PARTY IN INTEREST OR PERSON, FOR ANY ACT OR OMISSION THAT OCCURRED PRIOR TO THE DATE OF ENTRY OF THE FINAL DECREE AND THAT RELATES TO THE DEBTOR AND THE DEBTS OWED BY THE DEBTOR, EXCEPT FOR ACTS OF GROSS NEGLIGENCE, WILLFUL MISCONDUCT OR FRAUD, AND EACH EXCULPATED PARTY SHALL IN ALL RESPECTS BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES (IF ANY) UNDER THE PLAN.

Date: July 9, 2015                           TD Bank, N.A.

                                             By: _____
                                             Name:  Kendall V. Jones
                                             Title:   Vice President

MEI 20730118v.1